**Debra Lynn HURLOCK, Personal Representative for the Estate of Dolly D. Hurlock, Plaintiff-Appellant,**

v.

**PARK LANE MEDICAL CENTER, INC., et al., Defendants-Respondents.**

No. WD 36288.

Missouri Court of Appeals, Western District.

Oct. 8, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 3, 1985.

Application for Transfer Sustained Jan. 15, 1986.

Case Retransferred May 20, 1986.

Court of Appeals Readopted May 30, 1986.

---

1. The writer is not among them.

874

James D. Williamson, John R. Mencl, Independence, for plaintiff-appellant.

Don B. Roberson, John P. Poland, Kansas City, for defendant-respondent Park Lane Medical Center, Inc.

Theodore J. Furry, Birmingham & Furry, Kansas City, for defendants-respondents Gerald F. Williams, D.O. and Gary M. Johnston, D.O.

Darrell L. Havener, Daniel L. Fowler, Watson, Ess, Marshall & Enggas, Kansas City, for defendants-respondents Gordon Thorn, D.O., James C. Bolin, D.O., William J. Monaghan, D.O. and Peter I. Vilkins, D.O.

Before DIXON, P.J., and SOMERVILLE and NUGENT, JJ.

SOMERVILLE, Judge.*

Plaintiff (hereinafter appellant)[1] filed a suit for damages against Park Lane Medical Center, Inc. (hereinafter respondent hospital) and Doctors Williams, Thorn, Bolin, Monaghan, Vilkins and Johnston (hereinafter respondent doctors) arising from the amputation of her right leg. The trial court, at the close of all the evidence adduced during a lengthy jury trial, directed a verdict in favor of respondent doctors and against appellant in response to a motion for a directed verdict. Respondent hospital's motion for a directed verdict at the close of all the evidence was overruled and the case was submitted to the jury against respondent hospital. The jury, after due deliberation, returned a verdict in favor of respondent hospital and against appellant. Following an unavailing motion for new trial, this appeal ensued.

Before delineating the points relied upon by appellant on appeal, pause is taken to underscore the theories of negligence relied upon by appellant against the respective respondents. While a patient at respondent hospital for treatment of a spiral fracture to her right femur, appellant alleged she was beset with decubitus ulcers or, in lay terms, bedsores, which, by reason of complications arising therefrom, eventually necessitated amputation of her right leg just above the knee. One of the respondent doctors, appellant's admitting physician, entered a written order in the patient's medical records that she be turned in bed every two hours as she suffered from a number of medical complications which made her susceptible to the formation of decubitus ulcers. Appellant's theory of negligence against respondent hospital was that its nursing staff did not comply with the admitting physician's written order to turn her every two hours during her hospital stay. Concomitantly, appellant's theory of negligence against re-

---

* This opinion was readopted without change after Judge Somerville's death following retransfer from the Supreme Court.

1. Dolly Hurlock, the original plaintiff, died during the course of the trial, apparently from causes unrelated to the action sued upon, and the personal representative of her estate was substituted as party plaintiff.

spondent doctors [2] was that they failed to check her hospital records for compliance by respondent hospital's nursing staff with the written order to turn her every two hours.

Before engaging in a detailed resume of the facts, appellant's points on appeal may be paraphrased as follows. As to respondent doctors, appellant contends the trial court erred in directing a verdict at the close of all the evidence in their favor and against appellant. As to respondent hospital, appellant raises two instances of alleged trial error which she claims entitle her to a new trial, namely, (a) error in permitting counsel for respondent hospital, over her objection, to introduce extrinsic evidence on a collateral matter for the purpose of impeaching the credibility of an expert witness called by appellant, and (b) error in permitting an expert witness called by respondent hospital to testify on its behalf because the identity of the expert witness had not been timely disclosed in response to appropriate discovery.

Respondent hospital, in addition to meeting the points raised by appellant, asserts that appellant is not entitled to any appellate relief, notwithstanding the alleged trial errors, as she failed to make a submissible case against respondent hospital. According to an established line of case authority, when a plaintiff-appellant, following an adverse verdict and denial of a motion for new trial, predicates an appeal on alleged trial error and defendant-respondent asserts that plaintiff-appellant failed to make a submissible case, submissibility may become a viable issue for review on appeal. *Lilly v. Boswell*, 362 Mo. 444, 242 S.W.2d 73 (1951); and *R.H. Macey & Co. v. Bell*, 531 S.W.2d 58 (Mo.App.1975).

From a procedural standpoint, reaching the issue of submissibility in the context above mentioned has been tempered by the recent case of *Grippe v. Momtazee, et al.*, 696 S.W.2d 797 (Mo.1985), requiring that allegations of trial error must be addressed and disposed of on appeal before the issue of submissibility can be considered. If correctly perceived, the procedural mandate gleaned from *Grippe*, rests on the theory that if it is determined on appeal that no trial error occurred in conjunction with a jury verdict in favor of a defendant-respondent, the issue of submissibility is never reached as defendant-respondent is not an "aggrieved party" on appeal. If, however, one or more instances of trial error asserted by a plaintiff-appellant are ruled in her favor on appellate review, then the issue of submissibility becomes a "question inherent in deciding whether the error found by the appellate court merits reversal or remand for a new trial." *Grippe v. Momtazee, et al.*, supra.

█ Although not addressed in *Grippe*, in determining whether trial error found by an appellate court "merits reversal or remand for a new trial" in face of a plaintiff-appellant's failure to make a submissible case, a cardinal consideration is whether the trial error was of a nature which erroneously precluded evidence offered by a plaintiff-appellant, which, if considered in conjunction with all other evidence, would have made a submissible case. See *Look v. French*, 346 Mo. 972, 144 S.W.2d 128, 132 (1940).

Complying with the procedural mandate of *Grippe*, attention initially focuses on appellant's claim that the trial court, over her objection, permitted respondent hospital to introduce extrinsic evidence on a collateral matter for purposes of impeaching the credibility of a nurse called by appellant as an expert witness. On cross-examination, the nurse was questioned about the surrounding circumstances under which she left a hospital where she had previously been employed. Her answer was that she was charged with "taking drugs". On redirect examination, she denied any basis for the charge and testified

---

**2.** Respondent doctors were engaged in two group practices, and some or all of them vari-

ously attended appellant while she was a patient at respondent hospital.

that after she obtained the services of an attorney she was "reinstated" and then permitted to resign, and received all of her back pay. In presenting its case, respondent hospital was permitted, over appellant's objection, to introduce evidence that the nurse expert was charged with improperly charting the dispensation of narcotics to patients under her care, with the implication that the narcotics were being diverted to other persons.

■ At the outset, note is taken of the general rule that an opposing party is bound by a witness' answers elicited on cross-examination with respect to collateral matters[3] inquired into for purposes of impeachment and is not permitted to introduce extrinsic evidence to refute the witness' answers. *Overfield v. Sharp*, 668 S.W.2d 220 (Mo.App.1984). The logic or rationale underpinning this general rule is explicated as follows: "Two considerations are served by the rule. The jury is shielded from the interminable proliferation of issues which otherwise would allow the court to go into the merits of all such collateral matters, and instead of trying the one lawsuit, the court might well be called upon to try as many questions as there were collateral matters presented. *Hoffman v. Graber*, 153 S.W.2d 817, 820 (Mo. App.1941). Also, it avoids the unfairness and the surprise of requiring the opposing party to meet and disprove issues not raised by the pleadings." 668 S.W.2d at 223.

■ Respondent hospital contends that extrinsic evidence on the collateral matter under consideration falls within certain recognized exceptions to the general rule. First, respondent hospital appears to argue that expert witnesses may be impeached by the introduction of extrinsic evidence on collateral matters affecting their credibility without limitation. The exception which respondent hospital purportedly relies

appears to be restricted to the use of extrinsic evidence to show bias or prejudice on the part of a witness, including expert witnesses, in favor of one party or the other, as the bias or prejudice of a witness is not deemed to be a collateral matter. *Thornton v. Vonallman*, 456 S.W.2d 795 (Mo.App.1970); and *Weatherly v. Miskle*, 655 S.W.2d 842 (Mo.App.1983). The perimeters of the exception purportedly relied on by respondent hospital are drawn by the test for determining what constitutes collateral matters. As adopted in *Frechin v. Thornton*, 326 S.W.2d 122, 126 (Mo.1959), " '[t]he test as to whether the matter is collateral ... is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as part of his case ... [;] [i]f a fact may be shown in evidence for any purpose independently of contradiction, it is not collateral' ". Respondent hospital has failed to demonstrate how the extrinsic evidence in question served "any purpose independently of contradiction", nor does it claim that it tended to prove that the nurse expert was biased or prejudiced.

■ Respondent hospital also contends that introduction of the extrinsic evidence in question fell within an additional exception to the general rule because it was germane to impugn the nurse's competency or qualifications to testify as an expert witness. Resolution of this contention cannot be divorced from certain procedural events which preceded ultimate introduction of the extrinsic evidence. Before the nurse expert was examined in the presence of the jury considerable controversy arose as to the scope or breadth of her expertise with respect to various issues anticipated to arise during the trial. The trial judge, in response thereto, permitted the parties to conduct a preliminary voir dire of the nurse expert outside the presence of the jury regarding her qualifications and competency to testify as an expert witness on medi-

---

**3.** Proof of *conviction* of a crime, which is not involved in the instant case, is a statutory exception to the general rule. Section 491.050, RSMo Supp.1984.

cal records and decubitus ulcers. Respondent hospital never broached the matter inherent in the extrinsic evidence under consideration at any time during the preliminary voir dire examination of the nurse expert, although the record discloses that respondent hospital was possessed of the controversial information prior to and at that time. As observed in *Galovich v. Hertz Corporation,* 513 S.W.2d 325, 336 (Mo.1974), and *Wolfson v. Chelist,* 278 S.W.2d 39, 43 (Mo.App.1955), the obtaining rule is that a party waives any objection to the competency of a witness when he fails to make his objection thereto at the earliest available opportunity. No compelling reason has been advanced why the rule just mentioned should not apply in the instant case. Respondent hospital, by its failure to examine the nurse expert outside the presence of the jury during the preliminary voir dire examination as to the extrinsic evidence in question purportedly impugning her competency and qualifications, waived any objection to the nurse expert's competency or qualifications on that basis. No justification is perceived for permitting respondent hospital to complacently sit back and belatedly attempt to denigrate the nurse's qualifications on that basis for the first time during the presentation of its case. This court is constrained to hold, on the basis of the authorities heretofore cited, that the trial court erred in permitting respondent hospital, over appellant's objection, to introduce the extrinsic evidence in controversy.

Appellant also charges that the trial court erred in permitting an expert witness called by respondent hospital to testify on its behalf because the identity of the expert witness had not been timely disclosed in response to appropriate discovery. The expert witness in question was a member of respondent hospital's nursing staff. She served in a "supervisory" capacity and on one occasion was involved in appellant's care and treatment at respondent hospital. In response to supplemental interrogatories submitted by appellant as to the identity of any expert witnesses respondent hospital intended to call, several witnesses were specifically identified by respondent hospital along with a general reference to "all nurses who provided treatment to plaintiff while she was a patient at defendant Park Lane Medical Center, Inc." In response to earlier interrogation, respondent hospital submitted a list of names purportedly identifying all the members of its nursing staff who were involved in the care and treatment of appellant. The referred to list did not include the name of the nurse proffered by respondent hospital as an expert witness. Respondent hospital contends that appellant was privy to the identity of the nurse expert in question by reason of the fact that her name appeared on one occasion in appellant's permanent hospital records. Appellant contends that the identity of the particular nurse expert was difficult to ferret out of appellant's voluminous hospital records as it only appeared on one occasion, and, moreover, was somewhat illegible. The identity of the nurse expert in question was specifically revealed by respondent hospital to appellant during the course of trial some three days before respondent hospital called her as a witness on its behalf. Appellant made no effort to interview or depose the expert witness in question during the three day interim or otherwise ascertain from respondent hospital the gist or scope of her proposed or anticipated testimony. In overruling appellant's objection to the nurse being called as an expert witness, the trial judge expressed some concern about his ruling and candidly stated that if the testimony of the nurse expert "completely blindsides the plaintiff" he would "consider and entertain a motion to strike it." Appellant never moved to strike any of the testimony elicited from said nurse expert during the trial.

The spirit underlying the duty to respond on discovery as to the identity of expert witnesses a party intends to call is the avoidance of prejudice arising from unfair surprise to the opposing party. Appel-

lant's failure to move to strike the testimony of the nurse expert, particularly in light of the trial court's explicit invitation to consider and entertain such a motion if appellant was "blindsided" by her testimony, is indicative that appellant did not feel that she was prejudiced or unfairly surprised by permitting the nurse expert to testify on behalf of respondent hospital. A trial court is vested with broad discretion as to its choice of a course of action during trial when the introduction of evidence is challenged on the ground that it has not been disclosed in response to appropriate discovery; in the sound exercise of that discretion it may admit or reject such evidence, or determine and impose other appropriate sanctions. *Aulgur v. Zylich,* 390 S.W.2d 553, 556 (Mo.App.1965), cited with approval in *Sagehorn v. Phillips Petroleum Co.,* 648 S.W.2d 647 at 649 (Mo.App. 1983). Under the totality of the circumstances revealed by the record in the instant case, this court is not prepared to say that the trial court abused its discretion in permitting respondent hospital to call the nurse as an expert witness on its behalf. Assuming, arguendo, that the trial court abused its discretion, no prejudice inured to appellant in conjunction with the inherent issue of whether she made a submissible case against respondent hospital, or for that matter against respondent doctors, as all of her testimony is disregarded except insofar as it may have aided appellant's case.

It is patent that neither of the two instances of trial error raised by appellant precluded the introduction of evidence which would have aided appellant in making a submissible case against either respondent hospital or respondent doctors. See *Look v. French,* supra. Accordingly, the trial error heretofore found would not merit reversal or remand for a new trial if appellant failed to make a submissible case. Thus, a common issue finally surfaces which may be dispositive of this appeal in its entirety notwithstanding the alleged trial errors relied upon by appellant—did appellant make a submissible case against respondent hospital and respondent doctors. *Grippe v. Momtazee, et al.,* supra.

■ Appellate determination of whether appellant made a submissible case against respondent doctors is governed by the obtaining principle that the evidence must be considered in the light most favorable to appellant, giving appellant the benefit of all inferences reasonably drawn therefrom, and respondents' evidence is disregarded except insofar as it may aid appellant's case. *Grossman Iron & Steel Co. v. Bituminous Cas. Corp.,* 558 S.W.2d 255, 258 (Mo.App.1977). In the same vein, appellate determination of whether appellant made a submissible case against respondent hospital, as injected on appeal by respondent hospital, is governed by an obtaining principle of corresponding import—the evidence must be considered in the light most favorable to appellant, giving appellant the benefit of all inferences reasonably drawn therefrom, and respondents' evidence is disregarded except insofar as it may aid appellant's case. *Hansome v. Northwestern Cooperage Co.,* 679 S.W.2d 273, 274 (Mo. banc 1984).

■ The obtaining principles for appellate determination of whether appellant made a submissible case against the respective respondents, however, are not applied in a vacuum. A party is bound by the uncontradicted testimony of his own witnesses, including that elicited on cross-examination. *Silberstein v. Berwald,* 460 S.W.2d 707, 710 (Mo.1970); and *Turner v. Gateway Transp. Co., Inc.,* 569 S.W.2d 358, 360 (Mo.App.1978). When a party calls a witness who comes within the adverse witness rule, the party is bound by the testimony of such witness adduced on direct examination if the testimony is uncontradicted or is the only evidence on the subject; however, testimony adduced on cross-examination of an adverse witness is not binding on the calling party. *Taylor v. Riddle,* 384 S.W.2d 569, 573–74 (Mo.1964).

Additionally, a duty rests on a party-plaintiff to make a submissible case by substantial evidence of probative force and to remove the case from the realm of speculation, conjecture and surmise. *Zeigenbein v. Thornsberry*, 401 S.W.2d 389, 393 (Mo. 1966); *Probst v. Seyer*, 353 S.W.2d 798, 802 (Mo.1962); and *Rossmann v. G.F.E. Corporation of Missouri*, 596 S.W.2d 469, 472 (Mo.App.1980). Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case. *Zeigenbein v. Thornsberry*, supra, 401 S.W.2d at 393. Concomitantly, where evidence equally supporting two inconsistent and contradictory factual inferences as to ultimate and determinative facts is solely relied on to make a submissible case, there is a failure of proof as the case has not been removed from the tenuous status of speculation, conjecture and surmise. *Lappin v. Prebe*, 345 Mo. 68, 131 S.W.2d 511, 513 (1939); and *Osterhaus v. Gladstone Hotel Corporation*, 344 S.W.2d 91, 94 (Mo. App.1961). Determination of whether the evidence in a given case is substantial, as well as whether inferences drawn from a given state of facts are reasonable, are questions of law to be judicially resolved. *Hoock v. S.S. Kresge Co.*, 361 Mo. 139, 230 S.W.2d 758, 760 (banc 1950); and *Tharp v. Monsees*, 327 S.W.2d 889, 899 (Mo. banc 1954).

Before reviewing the evidence in conformity with the obtaining principles for determining submissibility on appellate review, and taking into consideration all attendant ramifications, it is appropriate to reiterate appellant's theories of negligence regarding the respective respondents. Appellant's theory of negligence against respondent hospital was that its nursing staff did not comply with the admitting physician's written order to turn appellant every two hours. Appellant's theory of negligence against respondent doctors was that they failed to check the patient's hospital records for compliance by respondent hospital's nursing staff with the admitting physician's written order to turn appellant every two hours. If appellant failed to prove by substantial evidence of probative force that respondent hospital's nursing staff did not comply with the admitting physician's order to turn appellant every two hours, then she failed to make a submissible case against respondent hospital. Concordantly, if appellant failed to make a submissible case against respondent hospital she also failed to make a submissible case against respondent doctors as her theory of negligence against them, in a final sense, is inextricably bound to the alleged failure of respondent hospital's nursing staff to turn appellant every two hours in compliance with the admitting physician's order.

An appropriate review of the evidence is now in order. On June 23, 1979, appellant was admitted to respondent hospital for treatment of a spiral fracture to her right femur. Her admitting physician, a specialist in internal medicine, is one of the respondent doctors. An orthopedic surgeon who treated the spiral fracture, is also one of the respondent doctors. The remaining respondent doctors were associates of either the admitting physician or the orthopedic surgeon just mentioned and purportedly participated in appellant's care and treatment at respondent hospital on intermittent occasions.

Appellant, at the time of her admission to respondent hospital, was beset with a number of medical complications which made her highly susceptible to decubitus ulcers—paraplegia resulting from an accident which occurred some twenty years ago, emphysema, poor circulation, osteoporosis, anemia, vulnerability to thrombosis, and a recent fracture of her right hip which had been surgically corrected. Therefore, upon admission her admitting physician entered a written order in her hospital records that she be turned every two hours.

Between June 23, 1979, and the morning of July 3, 1979, while a patient in respon-

dent hospital, decubitus ulcers developed in the areas of appellant's coccyx and right heel, and the early stages of a decubitus ulcer developed in the area of her right calf. During the morning of July 3, 1979, appellant was moved to Menorah Medical Center as her family had apparently become dissatisfied with the care she was receiving at respondent hospital. Appellant was not treated or cared for by any of the respondent doctors while she was a patient at Menorah Medical Center. While a patient at Menorah Medical Center, additional decubitus ulcers developed on appellant's right hip and right heel and the decubitus ulcers which developed while she was a patient at respondent hospital became more severe. The spiral fracture to appellant's right femur was surgically corrected while she was a patient at Menorah Medical Center. After surgical correction of the spiral fracture to appellant's right femur, she incurred another fracture to her right femur. Due to impaired ability of the decubitus ulcer to respond to conventional treatment, appellant was advised by her attending physician at Menorah Medical Center to submit to amputation of her right leg just above the knee, thereby rendering surgical correction of her most recent fracture unnecessary. Appellant acquiesced, and her right leg was amputated just above the knee at Menorah Medical Center. The loss of appellant's right leg due to amputation is the cornerstone of the damages claimed in the instant action.

Two nurses, neither of whom were on the staff of respondent hospital, nor in any way connected with respondent doctors, were called as expert witnesses by appellant in an effort to prove that respondent hospital's nursing staff failed to comply with the admitting physician's order to turn appellant every two hours. Appellant's hospital records, which were offered and admitted into evidence on her behalf, were reviewed by the nurse experts. Said records disclosed that nursing staff compliance with the admitting physician's order to turn appellant every two hours was recorded on her medical charts only 18 times out of a possible number (based on the length of her hospital stay) of 117 times. According to the professional opinion of the nurse experts called by appellant, attending members of respondent hospital's nursing staff were required, by accepted nursing practice, to "document" in appellant's medical records compliance with the admitting physician's order to turn the patient every two hours. Moreover, their failure to "document" compliance with the admitting physician's order gave rise to the inference that appellant was not turned every two hours by virtue of the adage or maxim "if it wasn't written down, it wasn't done." Both of the nurse experts, however, admitted on cross-examination that patient care takes priority over proper documentation, that nurses get busy and sometimes fail to "record" everything, and this was particularly true with regard to patients such as appellant who require special care. Respondent hospital's director of quality assurance and management, also a registered nurse, was ostensibly called by appellant as an adverse witness. This witness, on direct examination, also testified that the accepted standard for record keeping by nurses was to document or record compliance with doctors' orders. Said witness further testified on redirect examination that during the period of time in question nurses kept "patient care" or "flow charts" documenting patient care which were not kept as part of a patient's permanent medical records. This latter testimony stood uncontradicted and constituted the only evidence on the subject.

This court is acutely aware that appellate determination of submissibility in a given case is a difficult legal shoal to cross. Judicial vigilance must be exercised to refrain, on the one hand, from invading the zealously guarded prerogative of jurors to determine the facts, and, on the other hand, to retain the integrity of the law by refusing to affirm submissibility of a case based on nothing more than speculation, conjecture and surmise. Mistaken judg-

ments on issues of submissibility, one way or the other, are "shipwrecks" of the law. Although legal principles for ascertaining submissibility remain constant, the evidence to which they must be wedded changes from case to case in varying degrees. When the legal template heretofore cut for determining whether appellant made a submissible case against the respective respondents is superimposed on the evidence previously set forth, the inevitable conclusion is that appellant failed to make a submissible case.

■ It is appropriate to be reminded at this juncture that the crucial issue regarding submissibility is whether the nursing staff of respondent hospital failed to comply with the admitting physician's order to turn appellant every two hours. There was not a scintilla of direct evidence that appellant was not turned every two hours. Appellant argues that the uncontradicted fact that her hospital records disclosed that the nursing staff failed to record that she was turned every two hours spanning her hospital stay, conjoined with the adage or maxim "if it wasn't written down, it wasn't done," supports the reasonable inference that the nursing staff of respondent hospital failed to turn her every two hours in accordance with the admitting physician's written order. The legal frailty of appellant's argument is that it conveniently ignores the uncontradicted testimony of her own witnesses that patient care takes priority over proper documentation, that nurses get busy and sometimes fail to "record" everything, and, that during the period of time in question, nurses kept "patient care" or "flow charts" documenting patient care which were not kept or included as a part of a patient's permanent medical records. The testimony immediately heretofore referred to supports a reasonably equal, but contradictory, inference that the admitting physician's turn order was complied with

but that not every instance of compliance was documented in appellant's permanent hospital records. Bearing in mind that there was not a shred of direct evidence that appellant was not regularly turned every two hours, there is no escape from the conclusion that the entire spectrum of the evidence binding on appellant equally supported two inconsistent and contradictory inferences as to the ultimate and determinative fact of whether the admitting physician's written order to turn her every two hours was complied with. Ergo, appellant failed to remove her case against respondent hospital from the treacherous quicksands of speculation, conjecture and surmise, and, accordingly, failed to make a submissible case against respondent hospital for lack of substantial evidence of probative force.

Having concluded that appellant failed to make a submissible case against respondent hospital, it appears to necessarily follow, from a pragmatic point of view, that she likewise failed to make a submissible case against respondent doctors since her underlying theory of causation in fact regarding respondents collectively was a failure to turn appellant every two hours. Notwithstanding the aforementioned, this court will proceed to address the issue of submissibility against respondent doctors in light of whether there was any evidence as to the particular standard of care applicable to physicians and surgeons.[4] Respondent doctors have countered appellant's argument of submissibility against them on the ground that the record is devoid of any evidence that they breached the requisite standard of care applicable to physicians and surgeons vis-a-vis their alleged failure to check appellant's hospital records to ascertain documentation of compliance by the nursing staff of respondent hospital with the admitting physician's order to turn appellant every two hours.

■ The current standard of care applicable to physicians and surgeons in medical

4. It is noted that under the facts presented by the instant case the standard of care applicable to respondent hospital appears to be that of

ordinary care. *M. W. v. Jewish Hosp. Ass'n of St. Louis,* 637 S.W.2d 74 (Mo.App.1982).

malpractice cases is the degree of skill and learning ordinarily used under the same or similar circumstances by the members of their profession. See MAI 11.06. As noted in the "Committee's Comments" to MAI 11.06, this standard comports with the court's holding in *Gridley v. Johnson,* 476 S.W.2d 475 (Mo.1972), deleting the requirement of "good standing" and rejecting the "locality rule" in medical malpractice cases. When a patient in a medical malpractice case charges that the skill and technique exercised by a physician or surgeon constituted negligence "it is usually necessary to prove by expert testimony from members of that profession that the skill or technique used did not conform to the standards of that profession." *Steele v. Woods,* 327 S.W.2d 187, 199 (Mo.1959). See also: *Williams v. Chamberlain,* 316 S.W.2d 505, 511 (Mo.1958); *Pedigo v. Roseberry,* 340 Mo. 724, 102 S.W.2d 600, 606 (1937); and *Miller v. Scholl,* 594 S.W.2d 324, 328 (Mo.App.1980). The exception to the requirement of proof by expert testimony from members of the medical profession in a medical malpractice case occurs when the act of negligence relied on involves a matter which is within the knowledge of laymen and is not within the exclusive knowledge of members of the medical profession. *Steele v. Woods,* supra, 327 S.W.2d at 199. This exception, however, is tightly circumscribed in order to guard against the danger of permitting lay jurors to establish arbitrary standards relative to matters beyond their common experience and knowledge and to decide crucial issues upon nothing more than speculation, conjecture and surmise. *Haase v. Garfinkel,* 418 S.W.2d 108, 113 (Mo.1967); and *Pedigo v. Roseberry,* supra, 102 S.W.2d at 607–08.

▄▄▄▄ Members of the medical profession are "entitled to a wide range in the exercise of [their] judgment and discretion and [can] not be found guilty 'unless it be shown that the course pursued was clearly against the course recognized as correct by the profession generally....' " *Haase v.*

*Garfinkel,* supra, 418 S.W.2d at 114. No presumption of negligence is indulged in a medical malpractice case by reason of an adverse result. *Swope v. Printz,* 468 S.W.2d 34, 39 (Mo.1971); and *Hart v. Steele,* 416 S.W.2d 927, 931 (Mo.1967).

▄▄▄▄ The record in this case is devoid of any expert testimony by members of the medical profession that respondent doctors breached the requisite standard of care prevailing in the medical profession generally by failing to check appellant's hospital records for documentation of compliance by the nursing staff of respondent hospital with the admitting physician's order to turn appellant every two hours. Appellant seeks to overcome this evidentiary hiatus by relying upon the exception heretofore noted, as well as the testimony of several doctors as to what their individual custom or practice was under comparable circumstances and certain testimony elicited from nurses called as expert witnesses.

This court rejects appellant's contention that failure of respondent doctors to check appellant's hospital records for compliance by the nursing staff of respondent hospital with the admitting physician's order to turn her every two hours constituted a deviation from the requisite standard of care prevailing in the medical profession generally within the common knowledge and experience of lay persons, thus falling within the exception relative to the requirement of proof by expert medical testimony. At least two speculative assumptions would have to be indulged in order to accept appellant's premise that the conduct complained of fell within the exception she relies on. First, one would have to speculate that members of the medical profession rely solely on documentation by nurses in patients' records to show compliance with their orders to the exclusion of their own personal observation of patients under their care and treatment. Second, one would have to further speculate that "if it wasn't written down, it wasn't done" is recognized by the medical profession as an

inexorable adage or maxim constituting unassailable proof of an unknown fact. As previously shown by testimony binding on appellant this adage or maxim takes flight on the wings of speculation, conjecture and surmise by reason of the equally plausible inference that patient care takes priority over documentation and that nurses sometimes get busy and fail to record everything.

Appellant's reliance on the testimony of certain doctors as to what their *individual* custom or practice was under comparable circumstances is misplaced. Mere evidence that the conduct of a physician or surgeon did not measure up to the standards of an individual member of the profession, as opposed to the standards of the profession at large, does not constitute substantial evidence of probative force to support a submission of negligence in a medical malpractice case as individual standards may be higher or lower than the standards of the profession as a whole. *Swope v. Printz*, supra, 468 S.W.2d at 41; and *Miller v. Scholl*, supra, 594 S.W.2d at 329.

Appellant's reliance on the testimony of nurse experts to fill the evidentiary void under consideration is equally misplaced as there was no proof that they possessed the degree of knowledge and experience which would render them competent to express an opinion as to the requisite standard of care applicable to members of the medical profession relative to the charge of negligence against respondent doctors. See *Cebula v. Benoit*, 652 S.W.2d 304, 308–09 (Mo.App.1983). A fortiori, appellant's counsel stated of record during the trial that the testimony of the nurse experts was not "proffered" to establish the standard of care applicable to respondent doctors, and, additionally, the nurse experts during the course of their testimony expressly disclaimed any competency or intent to render an opinion as to the standard of care applicable to respondent doctors.

In sum, appellant failed to make a submissible case on the respective charges of negligence against either respondent hospital or respondent doctors.

The judgment below rendered in favor of respondent doctors and against appellant on the former's motion for a directed verdict made at the close of all the evidence, and the judgment below rendered in favor of respondent hospital and against appellant in accordance with the verdict returned by the jury, are both affirmed.

Judgment affirmed.

All concur.