Stanley **WATSON**, Plaintiff/Respondent,

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS**, Defendant/Third–Party Plaintiff/Appellant,

v.

**CITY OF ST. LOUIS**, Third–Party Defendant/Respondent.

No. 63507.

Missouri Court of Appeals, Eastern District, Division Two.

April 5, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 1994.

Application to Transfer Denied June 21, 1994.

Mary Elizabeth Coffey, The John J. Frank Partnership, St. Louis, for Watson.

Stephen M. Schoenbeck, Robert C. Ely, Schoenbeck, Schoenbeck & Associates, St. Louis, for Terminal R.R.

Ronnie L. White, City Counselor, Stephen J. Kovac, Asst. City Counselor, St. Louis, for City of St. Louis.

KAROHL, Judge.

Stanley Watson filed a lawsuit against Terminal Railroad Association of St. Louis [TRRA] for a leg injury which he sustained when he fell in a hole on property TRRA owned and rented to the City of St. Louis (City). Watson's theory was TRRA was liable because it failed to use ordinary care to fill, barricade or warn of a hole on TRRA's property left by a building demolition company. The court entered judgment on the verdict for plaintiff. TRRA appeals contending the trial court erred in: (1) denying a judgment notwithstanding the verdict for failure to prove causation; (2) granting Watson leave to amend and add a claim for aggravated damages during trial; (3) submitting a verdict directing instruction which was unsupported by the evidence; and (4) dismissing its third-party petition seeking indemnity against the City of St. Louis, lessee of the premises. We find the trial court erred in denying motions for directed verdict and JNOV because plaintiff failed to prove causation. The first point is dispositive. We reverse.

For purposes of this opinion the facts are undisputed. Watson worked as a tow service foreman for the City which operated a lot where stolen, abandoned, and overparked vehicles were towed and stored. Watson was sometimes required to "pull security," a procedure in which he hid on the lot to watch for vandals and thieves. Watson and others from time to time performed this duty. On May 20, 1987, Watson was "pulling security" when he noticed a group of trespassers on the tow lot. While pursuing one of the trespassers, he stepped in a hole and sustained serious leg injuries. Watson sued defendant TRRA because it owned the property in the area where the hole was located. TRRA joined City as a third-party defendant because City owned part of the lot and leased part of its lot from TRRA. Prior to trial, the court sustained a motion of City for dismissal of the third-party petition because the term of its written lease with TRRA had expired prior to the injury. The court concluded that § 432.070 RSMo 1986, which required that all contracts with municipal corporations be in writing, was a complete legal defense.

Approximately eighty percent of the tow lot was owned by defendant TRRA and leased to City, and twenty percent was

owned by City. Prior to Watson's injury, there was an unused building known as the "ice house" on the property. Part of the building was on property owned by City and part of it on property owned by TRRA.

The building was partially destroyed by fire. Owners of neighboring properties complained that the partially destroyed building was unsightly and dangerous. City condemned the building and ordered it removed. The record does not disclose why it was not removed by agreement with TRRA. Thereafter, City negotiated a contract with AALCO Wrecking Company for demolition of the building. It asked TRRA to become a party to the contract and pay the cost of demolition. City was to reimburse a part of the cost. TRRA agreed to that arrangement. City was not a named party to the contract with AALCO.

The contract called for wrecking the building down to adjoining yard grades, taking the foundation down to at least two and one half feet below the surrounding ground surface, and filling the basement area with clean dirt. The work was done and TRRA paid AALCO for its services on April 9, 1987. Approximately six weeks later, Watson had the accident in the area where the ice house building was previously located.

During trial only three witnesses, each called by Watson, testified about the existence and creation of the hole which caused Watson's injuries. Watson testified he had no previous knowledge of the hole's existence.

Myron Hochman, president of AALCO, was AALCO's site manager for the performance of the demolition of the ice house. He testified on cross examination that he inspected the work site after the work was completed and there were no holes in the surface of the ground where the ice house was formerly located.

Denny Hunter, the manager of the tow lot for the city, was Watson's other direct evidence witness on the issue of causation. He testified that shortly after AALCO completed its work, he inspected the demolition site. It appeared to him that AALCO had done a good job and there were no visible holes in

the surface. However, he had not been looking for holes. Following the demolition, the "ice house" area was used daily by truck drivers and other employees of the tow lot.

Watson offered the following verdict directing instruction to submit his theory:

In your verdict, you must assess a percentage of fault to defendant, whether or not plaintiff was partly at fault, if you believe:

FIRST, *the demolition company left a hole in defendant's property* and as a result the property was not reasonably safe, and

SECOND, *at the time of final payment* to the demolition company, defendant by using ordinary care, should have known of the existence of the hole, and

THIRD, defendant failed to use ordinary care to fill, or barricade, or warn of the hole, and

FOURTH, such failure directly caused or directly contributed to cause damage to plaintiff. (Our emphasis).

■ Watson's theory of recovery required proof AALCO left the hole which caused his injury and TRRA could have discovered the hole by reasonable inspection before it accepted and paid for the demolition work. Without such proof Watson failed to make a submissible case. Watson acknowledges that each of the three witnesses he called to testify about causation did not state affirmatively that the hole was present upon completion of the demolition or caused by it. Watson also recognizes that his claim that AALCO left the hole was refuted by Myron Hochman's testimony that the hole was *not* in existence when he inspected the completed project and by Dennis Hunter's testimony that he saw no hole after the work was finished.

However, Watson argues that he is not conclusively bound by the unfavorable testimony of his direct evidence witnesses because he proved causation by circumstantial evidence. Watson contends he has affirmatively proved that TRRA's failure to inspect the demolition site at the time of final payment for the work caused his injury. His circumstantial evidence consisted of the following: Watson was injured six weeks after

completion of the demolition; the hole which caused the injury was located in the demolition site; the contract specifications required the demolition company to take the foundation down to at least two and one half feet below the surrounding ground surface; the hole was approximately a foot and one half deep; the hole was two and one half feet wide; and, the hole was full of rocks and rubble and it looked like something of concrete substance had been pulled out of the hole. Individually and collectively these facts do not prove there was a hole left by AALCO when TRRA paid AALCO for its demolition work. The case was not tried on the theory the destruction work was defective and this caused the hole to develop after TRRA accepted the work.

To make a submissible case, substantial evidence and inferences must establish every element and not leave any issue to speculation. *Loomstein v. Medicare Pharmacies, Inc.*, 750 S.W.2d 106, 112 (Mo.App.1988); *Allison v. Sverdrup & Parcel & Assoc., Inc.*, 738 S.W.2d 440, 455 (Mo.App.1987). Substantial evidence is "that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide a case." *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 880 (Mo.App. 1985). "The determination of whether the evidence in a case is substantial and whether the inferences drawn are reasonable is a question of law." *Id.*

In determining whether a submissible case has been made, we view the evidence in the light most favorable to the verdict for plaintiff. *Eidson v. Reproductive Health Services*, 863 S.W.2d 621, 626 (Mo.App.E.D.1993); *Steenrod v. Klipsch Hauling Co., Inc.*, 789 S.W.2d 158, 171 (Mo.App.1990). "We presume plaintiff's evidence to be true and give plaintiff the benefit of all reasonable and favorable inferences to be drawn from [the] evidence. However, we do not supply missing evidence or give plaintiff the benefit of unreasonable, speculative, or forced inferences." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 765 (Mo. banc 1984).

■ Watson has not offered any direct evidence that there was a hole at the time AALCO completed its work on the project

that would have been visible to TRRA upon inspection. In fact, the only direct evidence offered on the issue proves that AALCO did not leave a hole which TRRA could have discovered. The general rule is that a party is bound by the uncontradicted testimony of its own witnesses. *In re Estate of Danforth*, 705 S.W.2d 609, 610 (Mo.App.1986); *De Lay v. Ward*, 262 S.W.2d 628, 634 (Mo. banc 1953); and, *Hoock v. S.S. Kresge Co.*, 230 S.W.2d 758, 761 (Mo. banc 1950). However, where the party offering the witness is able to contradict the unfavorable testimony with other evidence or circumstances, the party is not bound. *Id.*

Here, Watson's witnesses refuted his claim that AALCO left the hole. Although Watson argues he has offered circumstantial evidence that overcomes their testimony, none of the evidence offered would support a finding the hole existed when TRRA had a duty to inspect, namely at the time of payment.

In addition, Watson argues that the adverse testimony of his witnesses could legitimately be disregarded by the jury since the trier of fact has the prerogative to "believe all of the testimony of a witness, none of it, or accept part and reject part." *Concordia Lumber Co., Inc. v. Davis*, 696 S.W.2d 851, 854 (Mo.App.1985). Watson's assertion is only partially true. "Although not compelled to accept competent, substantial evidence as true, the trier of fact cannot, nevertheless, arbitrarily cast aside competent, substantial, and undisputed testimony of witnesses who are not shown by the record to have been impeached." *Scott v. Wheelock Bros., Inc.*, 357 Mo. 480, 209 S.W.2d 149, 151 (1948). Watson maintains that Hochman was successfully impeached during re-direct. We disagree. His memory was attacked but not his credibility. During re-direct Hochman testified that he had worked on hundreds of jobs after the ice house demolition. He was unable to remember where AALCO got the fill dirt or the names of the employees who worked on the project. Additionally, he testified that AALCO did not have any documents on file showing that the demolition site had been inspected or photographs of the completed work. But, Hochman's testimony that he inspected and there was no hole,

remains uncontradicted by his additional testimony or by any other evidence.

 Watson offered no evidence that AALCO left a hole at the demolition site which could have been found by TRRA if it had inspected at the time of payment. At most, the circumstantial evidence would support a finding AALCO may have left a visible hole, one that could have been seen when TRRA paid AALCO for its work. An owner with exclusive control has a duty to inspect prior to acceptance of the work. *McCoy v. Simon Sign Erection Co.*, 858 S.W.2d 827, 828 (Mo.App.E.D.1993). Here, TRRA did not have exclusive control, the premises were rented to City. However, when it accepted the work it relieved the general contractor of liability. *Id.* Its liability to third parties thereafter injured would be based on a breach of duty to inspect and discover patent defects at the time of acceptance. It is not liable as an absent landlord for latent defects, or defects occurring after acceptance.

The circumstantial evidence is insufficient for the additional reason that it does not exclude every reasonable conclusion other than AALCO caused the hole. It therefore does not establish a submissible case. *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 125 (Mo. banc 1983); *Herberholt v. dePaul Com. Health Center*, 625 S.W.2d 617, 623 (Mo. banc 1981). Watson's evidence does not disprove other possible causes for the hole. The area was used daily by various employees of the tow lot. None saw or reported a two and one half feet wide hole at the demolition site during the six weeks following the demolition and prior to Watson's injuries. The evidence does not exclude the possibility the hole was created by one of them. Nor does the circumstantial evidence disprove the possibility that the hole could have resulted from natural settling of the ground sometime after TRRA paid for the demolition. Circumstantial evidence must rise above guesswork, speculation, or surmise. It must support the inference the hole was there and visible at the critical time. It is not enough that the evidence shows equally possible, yet inconsistent conclusions. *Landis v. Sumner Mfg. Co. Inc.*, 750 S.W.2d 466, 469 (Mo.App. 1988). The overriding problem in this case is that the circumstantial evidence does not relate to the time and acceptance of AALCO's work. The evidence was not sufficient to support a finding of liability in opposition to plaintiff's direct evidence on absence of causation. It is erroneously directed at the time of Watson's injury.

The direct testimony of his own witnesses that a hole did not exist at that time remains uncontradicted except by circumstantial evidence which is inconclusive. Accordingly, Watson failed to make a submissible case. We need not consider the other claims of error directed at new trial on the dismissal of the third party petition.

The judgment of the trial court is reversed.

CRANE, P.J., and CRAHAN, J., concur.