**Scott E. THOMAS, Appellant,**

v.

**David E. METZLER, Appointing Authority of The Department of Revenue, Respondent.**

**No. WD 55398.**

Missouri Court of Appeals, Western District.

Oct. 13, 1998.

Jon E. Beetem, Hearne, Nickolaus, Green & Beetem, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John R. Munich, Deputy Atty. Gen. for Litigation, Gail Vasterling, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant Scott Thomas appeals a judgment of the circuit court affirming the decision of the Personnel Advisory Board (PAB) to terminate his employment with the Respondent Department of Revenue. Mr. Thomas argues that he had insufficient notice of the allegations upon which his termination was being based because the reasons stated in his written notice of termination from the Department of Revenue differed from the charges upon which the PAB affirmed his termination. Further, Mr. Thomas argues that the circuit court erred in affirming the termination because the allegations that he had made material misrepresentations to the Department of Revenue were not supported by competent and substantial evidence in the record. Finding both the notice and the evidence sufficient, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Thomas was the special agent in charge of the Kansas City office of the Missouri Department of Revenue's Criminal Investigation Bureau. On Monday, August 28, 1995, Mr. Thomas called the Bureau's secretary, Ms. Pierson, around 8:00 a.m. and told her he would be working on a case in Sedalia, Missouri for the day. Mr. Thomas then went to Camdenton, Missouri and purchased several properties at a tax sale, or auction, which began at 10:00 a.m. and lasted until 12:30 p.m. At the sale, Mr. Thomas was paged by Ms. Pierson. After the sale, Mr. Thomas called Ms. Pierson and learned that his superiors at the Administrator's Office in Jefferson City were looking for him. Mr. Thomas then asked her to prepare a leave slip for three and one-half hours of leave for that day, but he said he did not specify which hours the leave was to cover or why he was requesting the leave. Ms. Pierson prepared the leave slip indicating that the hours from 1:00 p.m. to 4:30 p.m. were taken as leave.

In mid-afternoon on August 28, 1995, the Jefferson City office tried to contact Mr. Thomas again by having its secretary, Ms. Atwell, page his beeper. When Mr. Thomas returned the page, he told Ms. Atwell that he was following up on a lead for a photography case in Sedalia. Mr. Thomas did not mention the fact that he was in Camdenton or the fact that he was taking leave for a portion of the day. His superiors asked him to contact Agent Leo Grothouse, who lived in Marshall, Missouri. His telephone records show he did make a few calls to try to reach Mr. Grothouse. He never reached him, however.

Sometime after August 28, 1995, Mr. Thomas signed his name to the leave slip prepared by Ms. Pierson, which stated that he had taken leave from 1:00 p.m. to 4:30 p.m. on August 28, 1995. When he signed the slip he did not indicate the secretary had erred in indicating his leave was for the afternoon rather than for the morning, during the time he had attended the tax sale. He simply signed and returned the slip to the Administrator's Office in Jefferson City. None of his records reveal any work done by him at any time that day, other than a few attempts at calling Mr. Grothouse.

In October 1995, the state bureau manager, Karen Yokley, learned from Mr. Thomas that he had purchased several properties at the tax sale in Camdenton. Knowing the sale usually took place once a year during regular working hours, Ms. Yokley decided to investigate whether Mr. Thomas drove a state car to the auction. In the course of her investigation, Ms. Yokley discovered that Mr. Thomas had not taken leave for the hours of the sale and further concluded there was no evidence that Mr. Thomas had conducted any type of investigation in either Sedalia or Camdenton on that day. Although Ms. Yokley did not personally ask Mr. Thomas about his activities on August 28, 1995, she submitted a report of her investigation, along with a recommendation to the Administrator, Mr. Dixon, that Mr. Thomas be reprimanded. Mr. Dixon then recommended to his superiors that Mr. Thomas be terminated. Mr. Thomas was sent a notice on November 15, 1995, which stated:

> This action is being taken for reasons that you misused Department of Revenue resources and materially misrepresented the performance of duties during regular working hours. In particular on August 28, 1995, and while purportedly at work, you traveled in a state vehicle to Camden-

ton, Missouri, and attended a tax sale conducted at the Camden County Courthouse from 10:00 a.m. until approximately 1:00 p.m. That sale was conducted during regular working hours and outside of your regular assigned work area. While attending this sale, you personally purchased several properties for taxes due. Your conduct in this matter is such that your dismissal is required in the interests of efficient administration, and the good of the Department of Revenue will be served thereby.

Mr. Thomas was dismissed from employment with the Department of Revenue on November 21, 1995. Mr. Thomas appealed his dismissal to the PAB, which held a hearing on November 26, 1996, and December 19, 1996. At the hearing, the Department presented evidence that, while he had told the Bureau secretary that he was working on a Sedalia photography case on the morning of August 28, 1995, he in fact had taken off the morning for the tax sale and had then taken leave only for the afternoon. The department also presented evidence that his status report and case records did not record any work at all for that day. He had neither indicated to the other agents assigned to the cases he said he was investigating that he would be working on their cases that day, nor recorded that he had done so, although it was Bureau policy to make a record of work done.

In his defense, Mr. Thomas stated that he had gone to Camdenton on August 28, 1995, to work on a roofing case assigned to another agent in the Kansas City office. He stated that he had intended to work on the case after the tax sale, and that he had intended for the three and one-half hours of leave listed on his leave slip for that day to cover the time he had spent at the sale in the morning. He said that he had not noted the secretary's error in listing the leave as being for the afternoon that day. He claimed that the reason he had not worked on the Camdenton roofing case in the afternoon was that before he could do so he was asked by the office to try to reach Agent Grothouse, and he had spent the afternoon first trying to reach that person by telephone and then driving to Agent Grothouse's home in Mar-

shall, Missouri in an unsuccessful attempt to locate him. Although Mr. Thomas testified that Mr. Dixon had told him to drive to the man's home, Mr. Dixon stated that he did not remember telling him to do so. Mr. Thomas did not identify any other work he had done on that day.

On January 14, 1997, the PAB issued findings of fact and conclusions of law affirming Mr. Thomas' dismissal. In its order, the PAB stated:

> Regardless of whether the Appellant intended to do some work on the [Camdenton] roofing case after the tax auction, he misrepresented to Dixon where he was and what he was doing. The Board finds that the Appellant's representations to Dixon, through Atwell, that he was working on the photography case in Sedalia were false and that they were material to his duty to account accurately to his supervisor.

Mr. Thomas filed a Petition for Review with the circuit court, which affirmed the PAB ruling. Mr. Thomas now appeals the circuit court's decision.

## II. STANDARD OF REVIEW

■ We review the decision of an administrative agency, not the circuit court's judgment. *Burgdorf v. Bd. of Police Comm'rs*, 936 S.W.2d 227, 230 (Mo.App. 1996), *citing, Ogden v. Henry*, 872 S.W.2d 608, 611 (Mo.App.1994). We defer to the PAB's findings of fact and will uphold its decision unless we find the decision "is in excess of jurisdiction, unsupported by competent and substantial evidence, or is arbitrary, capricious, or unreasonable." *Id.* In making this determination, we consider the evidence in the light most favorable to the PAB's decision. *SGOH Acquisition, Inc. v. Mo. Dep't of Mental Health*, 914 S.W.2d 402, 404 (Mo.App.1996).

## III. ADEQUACY OF NOTICE OF BASIS FOR DISMISSAL

■ Mr. Thomas asserts that his notice of dismissal was insufficient because the reasons it gave for his termination differed from the reasons for which the PAB ultimately affirmed his termination. Mr. Thomas asserts that this violated his due process right

to adequate notice of the reasons for dismissal and an opportunity to be heard.

■ Mr. Thomas is correct that regular Missouri state employees have a property interest in their jobs. *McCall v. Goldbaum,* 863 S.W.2d 640, 642 (Mo.App.1993). Due process requires that, before an employee can be deprived of this property interest, the State must give the employee adequate notice and an opportunity for a hearing. *Id.* In accordance with these principles, Section 36.380 provides in part:

No dismissal of a regular employee shall take effect unless, prior to the effective date thereof, the appointing authority gives to such employee a written statement setting forth in substance the reason therefore and files a copy of such statement with the director.

§ 36.380 RSMo 1994. Similarly, Section 36.390 provides that "[a]ny regular employee who is dismissed ... may appeal in writing to the board within thirty days ... upon such appeal, both the appealing employee and the appointing authority whose action is reviewed shall have the right to be heard and to present evidence at the hearing." § 36.390.5 RSMo 1994.

■ The purpose of giving an employee notice is to provide the employee with adequate information about the reasons for the dismissal so as to enable the employee to prepare a defense. *Brixey v. Personnel Advisory Bd.,* 607 S.W.2d 825, 827 (Mo.App. 1980). In determining whether a particular notice is sufficient, we thus examine whether it is sufficiently specific as to the time and nature of the incident at issue so that the employee has no uncertainty as to the acts related to his discharge. *Sorbello v. City of Maplewood,* 610 S.W.2d 375 (Mo.App.1980).

Mr. Thomas claims that his notice did not sufficiently inform him of the time and nature of the incident at issue, and that as a result he was insufficiently certain as to the nature of the charges to enable him to adequately prepare a defense. More specifically, he claims that the initial Notice of Termination sent by the Department on November 15, 1995, stated that he was being discharged because he misused Department resources

and misrepresented the performance of his duties in that he claimed to be at work while he was in fact at the tax sale on the morning of August 28, 1995. The notice in question stated:

This action is being taken for reasons that you misused Department of Revenue resources and materially misrepresented the performance of duties during regular working hours. In particular on August 28, 1995, and while purportedly at work, you traveled in a state vehicle to Camdenton, Missouri, and attended a tax sale conducted at the Camden County Courthouse from 10:00 a.m. until approximately 1:00 p.m. That sale was conducted during regular working hours and outside of your regular assigned work area. While attending this sale, you personally purchased several properties for taxes due. Your conduct in this matter is such that your dismissal is required in the interests of efficient administration, and the good of the Department of Revenue will be served thereby.

Mr. Thomas states that he thus thought all he had to do to refute the charges was to show that he did not intend to represent that he had been at work during the tax sale, but rather had intended to take leave for the hours of the sale, and that his leave slip indicated his leave for the afternoon rather than for the morning only due to a secretarial error which he had failed to notice. Mr. Thomas did in fact present this defense at the hearing. He argues that he was surprised when, at the hearing, the Department put on evidence that he had claimed to be in Sedalia working on the morning of the tax sale, and that he was unfairly surprised when the PAB affirmed his dismissal based on his misrepresentation that he was working in Sedalia. As noted earlier, the PAB's order stated, in relevant part:

Regardless of whether the Appellant intended to do some work on the [Camdenton] roofing case after the tax auction, he misrepresented to Dixon where he was and what he was doing. The Board finds that the Appellant's representations to Dixon, through Atwell, that he was working on the photography case in Sedalia were false

and that they were material to his duty to account accurately to his supervisor.

There is no merit to Mr. Thomas' claim. The November 15, 1995 Notice of Dismissal told him that he was being dismissed because he had in fact been at a tax sale in Camdenton when he had purported to be at work. At the hearing, the Department presented evidence in support of this claim by showing that Mr. Thomas had told his office he was working on a case in Sedalia on August 28, 1995, and that he had instead attended a tax sale in Camdenton during that time, and that he had again represented in the afternoon that he was working on a Sedalia photography case, but was instead in Camdenton. The PAB affirmed his dismissal because it found that he had materially misrepresented his conduct by asserting he was working on a photography case in Sedalia on the morning of August 28, 1995, when in fact he was at a tax sale in Camdenton. The PAB clearly did not believe Mr. Thomas' claim that his failure to request leave for that morning was just an error, and it found that whether he in fact had planned to work in Camdenton that afternoon was irrelevant. He had misrepresented that he would be working in Sedalia and had not in fact done so—he had gone to the sale instead. That is just what the November 15, 1995 notice stated. There was no surprise.

In fact, Mr. Thomas' counsel did not even claim surprise at the hearing, nor did he ask for a continuance once evidence about Mr. Thomas' supposed presence in Sedalia was introduced. He never indicated a need for further time to prepare a defense until after he received the PAB's decision affirming his dismissal. This was too late. This Court addressed a similar issue in *Clark v. Bd. of Directors*, 915 S.W.2d 766 (Mo.App.1996). We there held that an objection to time limits or a request for additional time must be made to the agency during the hearing in order to give it an opportunity to consider the issue, because without doing so, we never know how the board may have responded. So too, here, if Mr. Thomas believed that he needed more time to prepare a defense to the issues addressed at the hearing, he could and should have objected to the notice and

requested a continuance then. He did not do so. His attempt to raise this claim for the first time only once he received a bad result is without merit.

## IV. SUFFICIENCY OF THE EVIDENCE

■ In his second point, Mr. Thomas asserts that the decision of the PAB was not supported by substantial evidence. The decision of the PAB must be supported by substantial and competent evidence upon the whole record. *Downs v. Personnel Advisory Board*, 671 S.W.2d 12, 15 (Mo.App.1984). Substantial and competent evidence is that which "if true, has probative force upon the issues, and from which the trier of fact can reasonably decide a case." *Hurlock v. Park Lane Med. Ctr., Inc.*, 709 S.W.2d 872 (Mo. App.1985). It requires more than just speculation, conjecture and surmise. *Id.*

First, Mr. Thomas argues that the lack of a record documenting any work he performed on the day in question is not sufficient evidence upon which to infer that no work was performed. In support of his argument that a negative inference is not permitted from a lack of documentation, he cites three cases: *State v. Puchta*, 786 S.W.2d 154 (Mo.App.1990); *Hurlock v. Park Lane Med. Ctr., Inc.*, 709 S.W.2d 872 (Mo.App.1985); and *Blair v. Associated Wholesale Grocers, Inc.*, 593 S.W.2d 650 (Mo.App.1980). In *Puchta*, the court rejected a negative inference from lack of documentation in medical records that no medical treatment had occurred, because the evidence showed that the records had been misplaced. In *Hurlock*, the court did not allow a negative inference from a lack of documentation in medical records when the evidence showed that other activities, such as patient care, were prioritized over strict record keeping. In *Blair*, the court held that a negative inference from a lack of record was not permitted when the actual record keeper lacked independent knowledge of the event.

■ None of the situations or exceptions in the above cases are applicable to the facts in this appeal. Mr. Thomas has not asserted that a status report was kept for August 28, 1995, but that it was destroyed or misplaced, nor has he argued that thorough or urgent

investigation took precedence over record keeping here, or that another individual without independent knowledge of his work was responsible for the records. To the contrary, the evidence below was that agents were supposed to keep records of their activities, and that an investigative trip to Sedalia or Camdenton is the type of activity which is usually logged by an agent. Yet, Mr. Thomas failed to log the trips in the files, and did not discuss his alleged investigation with the investigators assigned to those cases either before or after August 28, 1995, until he received notice of the proposed disciplinary action. On these facts, although Mr. Thomas' failure to keep a record of his work activity is not dispositive, it was admissible evidence on the issue of whether Mr. Thomas had in fact performed any work on the cases he claimed to have worked on those days.

Mr. Thomas also argues the PAB's disbelief of his explanation for his conduct did not provide a sufficient basis for it to find against him. It must have affirmative proof of his misconduct. The case Mr. Thomas cites to support this proposition, *Boatmen's Bank of Pulaski County v. Brooks,* 869 S.W.2d 781 (Mo.App.1994), in fact addresses the converse situation, and holds that disbelief of the evidence provided by the party having the burden of proof on an issue is, in fact, generally sufficient evidence to support an adverse finding on that issue, even though the other party has offered no evidence. *Id.* at 785. In any event, the Department did present much affirmative evidence in support of its assertion that Mr. Thomas misrepresented his work activity to his supervisors on August 28, 1995. Thus, it showed that he had said he was going to Sedalia to work on a photography case, but that he never indicated either orally or in writing to anyone that he had in fact worked on the case, that he had in fact been at a tax sale at the time he claimed to be working on the case, and that he had made no record to support his claim that he had gone to Camdenton to work on a roofing case. The only record of work activity for the day in question are a few telephone calls he made in the afternoon. Moreover, his story changed over time. Finally, Mr. Thomas admitted that he was at the tax sale

and not in Sedalia on the morning in question, and that his leave slip was not accurate.

From this evidence the PAB reasonably could have concluded that Mr. Thomas made material misrepresentations to his superiors that he was working in Sedalia on August 28, 1995, that he in fact attended a tax sale for his personal benefit, that he sought pay for those hours, and that he claimed that he had meant to file leave for those hours only once he received notice that the Department had questions about his work activity on the day in question. Point two is denied.

For the reasons set out above, the judgment is affirmed.

HANNA and LOWENSTEIN, JJ., concur.