IBE H. LOOK, Appellant, v. ANNA FRENCH, KATHERINE IHRIG, HERMAN LOOK, FRED LOOK, WILLIAM LOOK, FANCHON LOOK SPICE, HARRY LOOK, ALFRED A. LOOK, NORMAN LOOK, HAROLD B. LOOK, HELEN LOOK VEACH, JENNIE LOOK ZEHR, CHARLOTTE LOOK, LENORA LOOK WELLS and HATTIE LOOK HOBLITZEL, Appellants, and EVA I. LOOK and LINCOLN LOOK.—144 S. W. (2d) 128.

Division One, October 31, 1940.

*C. O. French* and *W. Raleigh Gough* for appellants.

974

*Thomas J. Brown, Searles Edwards* and *John S. Marley* for respondents.

HAYS, P. J.—This is a proceeding to contest a will. The testator, Henry Harm Look, was a physician and surgeon who specialized in eye, ear, nose and throat practice. For many years he resided in Kansas City. The will in question was written on the 9th of March, 1936, a few days before Dr. Look's death. By it testator left all of his estate, except one dollar bequeathed to each of his surviving brothers and sisters and the children of his deceased brothers, to his widow Eva Look. The present action was filed by one of the surviving brothers who joined as defendants the other heirs at law of testator and the widow Eva Look. The petition, after alleging the probate in common form of the purported will, contained averments as to testator's mental incapacity and undue influence charged to have been exercised by Mrs. Look. It also alleged, "that the said paper writing is not the will of the said Henry Harm Look." Contestants assert that the last quoted allegation puts in issue the formal validity of the document's attestation.

Mrs. Look answered admitting the issuance of letters testamentary to her and denying the allegations of incompetence and undue influence. She alleged that the proffered document was the will of her husband and asked its probate in solemn form.

Lincoln Look, a nephew, filed his answer asking that the plaintiff be put upon strict proof of the allegations in his petition.

The remaining defendants, heirs at law of Dr. Look, answered admitting the allegations of the petition and joining in the prayer thereof. These defendants, together with the original plaintiff, will be spoken of as contestants, while we will refer to Eva Look and Lincoln Look as the proponents.

Error is assigned upon the refusal of the trial court to admit certain evidence and upon its action in directing a verdict for the proponents. This necessitates a review of the evidence.

Henry Harm Look, the testator, was at the time of his death 59

years old. For some 16 years or more he had lived and practiced in Kansas City where he shared offices with Dr. Omar Pinkston, a general practitioner, and Dr. Arthur Closson, a dentist. The relationship between Dr. Look and his brothers and sisters, contestants herein, was unusually close and affectionate. He frequently visited in their homes and they in his. A younger brother, Ibe, was a traveling salesman and made a practice of staying in the home of Dr. Look whenever he was in Kansas City. Mrs. French, a sister, had been a partial invalid for some years and Dr. Look paid for her medical care, including several operations performed upon her. He also sent her two or three hundred dollars a year. Testator was especially fond of his nieces and nephews, children of his deceased brothers, looking upon them almost as his own children.

As to the relationship between Dr. Look and his wife, the picture presented by the record is not so clear. There is evidence tending to show that she frequently "nagged" at him in regard to such minor matters as his eating, smoking, the hour of retirement at night, and the times for him to take a bath. The evidence, however, seems to disclose that he met her nagging with philosophical indifference, and that he did not by any means always give in to her demands. Once or twice she is shown to have used profane language towards her husband.

On Saturday evening, March 7, 1936, Ibe Look and his wife were present at the testator's home. Dr. Look came in late to dinner. During the meal a quarrel between testator and his wife occurred, during the course of which testator said: "Eva, I have asked you many a time to not call me up at my office and humiliate me in front of my patients. You humiliate me and I cannot do my work. Today I had a special patient in there. I was so incapacitated I didn't know what to do." Later testator apologized to his brother and sister-in-law for having made this scene.

The next day testator became ill. Another physician who was summoned thought that he was suffering from a heart attack, but on Monday morning the attending doctors diagnosed his illness as pneumonia. They directed that he be placed in an oxygen tent. On Sunday night Eva Look and her husband occupied the same room and witnesses heard them conversing. The only words distinguished related to Dr. Look's physical condition. On Monday morning Mrs. Look sent for Dr. Look's attorney saying that her husband desired to complete his income tax return. (Note that March fifteenth was rapidly approaching.) Shortly thereafter Doctors Pinkston and Closson were called to testator's residence to witness a will. Dr. Pinkston did not know who had summoned him. Dr. Closson thought that testator's lawyer, Mr. Manard, had asked him to come. They found testator in bed and stated that the oxygen tent was over him. This tent, which was made of canvas, contained a large transparent window in front and one on

each side permitting the patient to see what was going on in the room. Dr. Look was propped up in bed. The attending nurse, Miss Tobiason, said that she did not recollect the oxygen tent having been installed before the execution of the will. The two doctors, the nurse, the attorney, Mr. Manard, and Eva Look were present in the room. The will, which had been already prepared, was handed by Mr. Manard to testator, who read it over carefully and affixed his signature thereto. It was then taken by Mr. Manard and spread out on a table near the foot of the bed and within full view of the testator. Mr. Manard pointed to the place where the witnesses were to sign and the two doctors and nurse affixed their signatures thereto. Neither testator nor Manard orally asked the witnesses to sign. All of the witnesses agree that testator seemed to be mentally alert and was not apparently suffering much pain. A few days later his condition became worse and shortly thereafter he died.

Contestants admit that there is no evidence in the record of mental incapacity, but they claim that the case should have been submitted to the jury on the question of the proper execution of the will and upon undue influence.

As tending to prove the charge of undue influence contestants offered to show that sometime before the making of the will testator stated to some of his relatives that he intended to provide in his will for his kinsfolk, particularly for Mrs. French. They also offered to prove that Dr. Look had stated to one of his sisters that his wife constantly embarrassed him in the presence of strangers by her quarreling, bad temper and profanity and that he would have divorced her except for the fact that he feared such action would ruin him. The trial court at first excluded this evidence, but later admitted it, limiting its application to the question of testator's soundness of mind. We think this action was erroneous. If the declarations of the testator had been offered to prove the truth of the facts stated by him they would have been incompetent as hearsay, but they constituted verbal acts and had a tendency to prove the mental attitude of testator toward his kinsfolk and his wife. They were therefore relevant on the issue of undue influence. [Canty v. Halpin, 294 Mo. 96, 242 S. W. 94; Gott v. Dennis, 296 Mo. 66, 246 S. W. 218; Kuehn v. Ritter (Mo.), 233 S. W. 5.]

Contestants also offered to show that two days after the making of the will testator said to his sister-in-law, "Why are they doing all these things to me? I don't want to get well. You know, all during my life I have never got to do the things I wanted. I have always had to do the things that Eva wanted me to do, and now I can't even make my own will." This evidence was excluded, we think erroneously. It also would not be admissible to prove the truth of the facts stated, but like the evidence mentioned in the preceding paragraph would throw some light on the state of the testator's feelings and hence would be relevant as to undue influence.

Respondents argue that even though the declarations of the testator might be relevant on the question of undue influence they should be admitted only where other substantial evidence on that issue was present in the record. It is true that we have held evidence of this character, standing alone, to be insufficient to take a case to the jury. [Beckmann v. Beckmann, 331 Mo. 133, 52 S. W. (2d) 818; Larkin v. Larkin (Mo.), 119 S. W. (2d) 351; Meyers v. Drake, 324 Mo. 612, 24 S. W. (2d) 116.] But the admissibility of circumstantial evidence does not depend upon its sufficiency as standing alone to take the case to the jury. Admissibility and sufficiency are separate and distinct.

Contestants also offered to show that a short time before Dr. Look's death Eva Look stated to a Mrs. Wilcox: "I don't know how I am going to do it, but some way or other, I am going to get Dr. Look to change his will so as to leave out Ibe Look." The court excluded this evidence. The general rule in Missouri is that an extra-judicial admission made by one of several legatees or devisees is not admissible in a will contest. This rule forms an exception to the general doctrine as to admissibility of admissions made by parties. It is based upon the fact that a separate judgment in such a case could not be rendered against one of several proponents; the only judgment possible being the admission or rejection of the entire proffered will. It would be unfair, so runs the accepted theory, to permit the rights of one legatee or devisee to be affected adversely by an extrajudicial admission made by another. The authorities are discussed in Schierbaum v. Schemme, 157 Mo. 1, 57 S. W. 526. There are exceptional circumstances, however, under which the rule of the Schierbaum case is inapplicable. [Teckenbrock v. McLaughlin, 209 Mo. 533, 108 S. W. 46; Meier v. Buchter, 197 Mo. 68, 94 S. W. 883.] In the Teckenbrock case (l. c. 542) Judge LAMM expressed the belief that the rule would not apply "in a case where there is only one devisee or legatee to be affected by avoiding the will." While his statement was *obiter* it is based on sound logic. In the instant case there are technically two proponents: Eva Look, whose extrajudicial admission was sought to be proved, and Lincoln Look. But Lincoln took only one dollar under the will and would have received a larger sum in the event of his uncle's intestacy. Hence only the interest of Eva Look would be adversely affected by a judgment rejecting the will. In applying the rule of the Schierbaum case we should look to substance rather than to form. The evidence therefore should have been admitted.

Contestants offered to show that after the funeral of Dr. Look his wife caused certain flowers which had been sent in by friends to be placed on the graves of some of her relatives. The trial court refused this evidence. We cannot see how it can have any possible relevancy. It does not even remotely tend to prove any issue in the case. The action of the trial judge was therefore proper.

■ Miss Tobiason, the nurse attending Dr. Look during his last illness and one of the attesting witnesses of the will, was called by contestants. She was asked whether she had any instructions as to who should be admitted to the room at the time of the execution of the will. She answered: "I think there wasn't supposed to be anyone else in the room." The court struck out this answer. She was then asked whether any statement was made to her as to who was to be permitted in the room and answered, "Well, I think they said, 'Don't let anyone else in.'" This was also stricken, we think properly. Aside from the question of whether or not the statement was a conclusion on the part of the witness, she does not purport to say that Mrs. Look directed her not to let anyone else in. Such instruction coming from anyone else would certainly have no bearing on the issue of undue influence or on any other issue in the case.

■ It is settled law that where a trial judge has erroneously excluded evidence but the same is preserved in the record by proffer and thereafter a verdict is directed for the defendant, this court on appeal may consider the entire record including the evidence erroneously excluded, and, if the evidence received, together with that which was improperly rejected, is insufficient to make a submissible case, will affirm the judgment below. [Taylor v. Kansas City Terminal Railway Co. (K. C. C. A.), 240 S. W. 512; Southworth v. Southworth, 173 Mo. 59, l. c. 74, 73 S. W. 129; Adair v. Kansas City Terminal Railway Co., 282 Mo. 133, 220 S. W. 920; Remmers v. Remmers (Mo.), 239 S. W. 509.] We proceed, therefore, to consider the sufficiency of the evidence, applying the foregoing rule. In so doing we accept at its face value all of the evidence favorable to the contestants and draw therefrom all reasonable inferences.

Having done so, we find no substantial evidence of undue influence. True, Mrs. Look had ample motive to influence her husband in the execution of this will, nor was opportunity for the exercise of such influence wanting. But proffer of motive and opportunity alone do not make a sufficient case of substantial evidence.

■ Contestants lay stress upon what they characterize as the unnatural provisions of this will. We have often held that the simple fact that a testator disinherits someone who might be considered the natural object of his beneficence is not sufficient alone to prove that his will was the product of improper influence exercised over his mind. [Larkin v. Larkin (Mo.), 119 S. W. (2d) 351.] It is true, as we said in the Larkin case, that such a disposition of property is a fact from which an inference of undue influence may arise, and, if taken with other circumstances giving rise to similar inferences, may make a submissible case. But it cannot be said that the provisions of this will were unnatural. It is by no means unreasonable for a testator. to leave his entire estate, particularly if it is no larger than the present estate is shown to be (the inventoried value of Dr. Look's estate was

slightly less than $16,000) to his wife. However great the affection of a married man for his brothers, sisters and other collateral kindred may be, he may reasonably feel that his first obligation is to provide for the support of his widow.

Contestants assert, however, that this would not be true where a testator is shown to have been on bad terms with his wife. But the evidence here falls short of such proof. Even though rather frequent quarrels had occurred—and that is not satisfactorily proven here— even though at one time he might have contemplated divorcing her, still he might well have felt that he owed her a duty to provide her a living, and that his entire estate was no more than sufficient for that purpose.

But it is said that at one time Dr. Look intended to make provisions in his will for his brothers and sisters and particularly for Mrs. French. Admitting for the sake of argument that this is true, he might well have changed his mind on that score, and the fact that he did change his mind would not prove that he had been unduly influenced. His estate may have proved of less value than he had originally thought. Other circumstances may have changed. It is common knowledge that many men of affairs alter their wills with considerable frequency to meet changing conditions, and if, from the mere fact of alteration, undue influence would be presumed, few wills could be allowed to stand.

We come now to the statement made by Eva Look to Mrs. Wilcox. When examined carefully it will be seen that Mrs. Look merely said that she would attempt to get her husband to change his will. She did not say how she intended to accomplish this result. Mere influence exercised by a beneficiary will not avoid a will. It must be undue influence, which breaks down and overcomes the volition of the testator. [Huffnagle v. Pauley (Mo.), 219 S. W. 373; Thompson v. Ish, 99 Mo. 160, 12 S. W. 510, 17 Am. St. Rep. 552.] We cannot infer from Mrs. Look's statement that she intended to exercise undue and unlawful influence over the will of her husband.

The analogy sometimes drawn between the facts of circumstantial evidence shown in a case and the links of a chain is not an accurate one. A case of circumstantial evidence may often be built up from the combined effects of a multitude of inferences drawn from different circumstances no one of which would in itself be sufficient. But the cumulative effect of all of the inferences to be drawn must be strong enough so that a reasonable jury might be led thereby to reach a conclusion favorable to the party producing the evidence. We think that all of the circumstances shown in this case taken together fail to establish such proof, and that contestants therefore were not entitled to go to the jury on the issue of undue influence.

Contestants urge that the formalities required by our statute in connection with the execution of this will were not duly observed,

in that the testator failed to request the subscribing witnesses to attest the document. It is a general rule that such a request must be made by the testator or someone acting for him and in his presence. [28 R. C. L. 127.]. But such a request need not be oral or even verbal. It may be inferred from the circumstances surrounding the signing. [Schierbaum v. Schemme, supra; Callaway v. Blankenbaker, 346 Mo. 383, 141 S. W. (2d) 810; Thomas v. English, 180 Mo. App. 358, 167 S. W. 1147.] In the instant case the testator, who is shown to have been in possession of his full mental faculties and who was a man of rather exceptional education, carefully read over the document prepared as a will. This document contained an attesting clause stating that the witnesses were signing in the presence and at the request of the testator. He then signed his name to the document and in his presence and view and without objection the document was passed to the witnesses and the scrivener of the will indicated to them by gesture where they were to sign. Still in his presence and view and without objection from him they set their hands to the paper. It is hard to conceive of a clearer case of implied request. There was no question of fact here upon which a jury could pass.

The trial court therefore properly directed a verdict for the proponents, and, since the propriety of such direction would have been plain even if the improperly rejected evidence had been accepted, the judgment below should not be disturbed.

The verdict was in proper form, to-wit.:

"We, the jury, find the issues in favor of the will and that the instrument introduced in evidence, dated March 9, 1936, signed by Henry Harm Look, is the last will and testament of Henry Harm Look. (Signed) Ninus W. Sheldon, Foreman."

The verdict was received by the court and entered of record by the clerk. However, the form of the judgment entered upon the verdict is somewhat unusual and is subject to criticism. It is as follows:

"Therefore, in accordance with the said verdict herein, it is ordered and adjudged by the court that plaintiff take nothing by his action herein, and that proponents do have and recover the costs herein incurred and that execution issue therefor."

A proceeding to contest a will sets aside the probate in common form and the circuit court should in its judgment either reject the will or order that the same be probated in solemn form. However, we have held that the verdict of the jury establishes the will and that a judgment in the form here employed, while irregular, is nevertheless valid. [Gordon v. Burris, 141 Mo. 602, 43 S. W. 642; Bensberg v. Washington University, 251 Mo. 641, 1. c. 655, 158 S. W. 330.]

The judgment of the circuit court must therefore be affirmed. It is so ordered. All concur.