**Richard SIMPSON, Respondent,**

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.**

No. 48687.

Supreme Court of Missouri,

Division No. 2.

May 14, 1962.

Robert C. Ely, St. Louis, for appellant.

Eugene W. Wines, St. Louis, William L. Mason, Jr., St. Louis, for respondent.

PER CURIAM.

Respondent claimed $75,000 as damages for alleged personal injuries which he averred he received when an automobile in which he claimed he was a passenger was struck by appellant's unattended flatcar. We shall hereinafter refer to the parties as they were designated in the trial court. After the jury found for defendant, plaintiff was granted a new trial on the grounds that the trial court erroneously admitted and refused to strike the testimony of defendant's witness Carpenter. The question on this appeal is whether the trial court erred in admitting that testimony.

It was defendant's trial theory that plaintiff and the three other persons who allegedly were in the automobile at the time it was struck had staged a fake accident; that the automobile in question was stopped on a railroad track and was struck at a time when no one was in it; that plaintiff and his companions or others with their knowledge caused and permitted defendant's heavily loaded flatcar to leave the place on an industrial siding where it had been spotted and to roll downgrade into the side of the automobile; and that thereafter plaintiff and two of his companions reentered the automobile (the driver claimed to have been thrown from the automobile and he remained on the ground) and were there when the police arrived.

There was evidence, considered favorably from the standpoint of defendant, justifying this statement. In the afternoon of July 15, 1959, defendant spotted a loaded flatcar on a spur track which served an industrial plant located a short distance south of Penrose Street in St. Louis. That track ran from the plant downgrade north across Penrose. Members of the train crew spotted the flatcar about 130 feet south of Penrose and placed a large wooden block and a railroad spike under the wheels of the car and placed a derail on top of one of the rails at a point about 10 or 15 feet north of the flatcar's north end. A derail is a heavy metal safety device which auto-

matically derails and thereby stops a railroad car when the flange of one of its wheels runs against the derail.

During the evening of July 15 plaintiff, who at the time was an off-duty switchman employed by another railroad, went to Floyd Allen's tavern on North Fourteenth. About nine o'clock plaintiff and Allen went to Clemens' place located at Penrose and Grove. There they met and talked with Clemens and one Jett and drank beer. About midnight those four went to a restaurant for awhile and departed in Clemens' car intending to return to where Allen's automobile was parked. Clemens drove his automobile east on Penrose. Defendant's unattended flatcar, traveling about eight miles per hour and weighing as loaded more than 135,000 pounds, struck the automobile's right side and shoved it northwardly down the track for some 67 feet where the automobile struck a bumping post (which was at the end of an adjoining stub track) and came to rest west of the track. (The flatcar was "picked up" by a subsequently pursuing engine 3½ miles farther on.) No authorized person caused the flatcar to move from its stationary position on the siding or removed the derail. The automobile was stationary on the railroad track when struck, contrary to the testimony of plaintiff and of two of the other occupants of the automobile (the fourth did not testify) to the effect that the automobile was traveling from 15 to 25 m. p. h. when struck.

Plaintiff's evidence was that the force of the collision caused the left front door to open and that the driver, Clemens, was thrown out and that plaintiff and the other two remained in the automobile during the time it was pushed northwardly and until a police officer arrived some five to ten minutes later.

The police department received a call at 2:01 a. m. on July 16 advising it of the collision. The caller refused to identify himself as often happens when accidents are reported by telephone. The first police officer to arrive reached the accident scene at 2:05 a. m. He found Clemens seated on the north sidewalk of Penrose just west of the track in question. He found the automobile where it had stopped west of the track with its left front door open. No one was in the driver's seat, one was seated in the right front seat, and plaintiff and another were in the back seat. The officer saw no other person at the scene when he arrived. None of the four men, who according to plaintiff's evidence were in the automobile at the time it was struck, had the appearance of having been in an accident in that none had any dirt or dust on his clothing, no one's hair was mussed, none bore external marks of injury. Clemens, who allegedly was thrown out, presumably onto the track in front of the moving vehicles, had no visible cuts or scratches, nor was he apparently bleeding (contrary to plaintiff's witness Allen who testified that he saw bruises, scratches and cuts on Clemens and saw blood running from his nose and mouth). There was medical testimony that it was unlikely that all four occupants of the automobile struck by the flatcar in the manner described would have escaped without a visible scratch.

Plaintiff and Allen testified that they knew that Clemens had been thrown out but they remained seated with the other occupant in the automobile for at least four or five minutes and made no attempt to help or assist or inquire about their companion although they were conscious at all times and although when the police officer arrived they left the automobile under their own power.

The area surrounding the accident point was exclusively an industrial district.

Over plaintiff's objection, defendant's witness, Ernest Carpenter, testified that he was a night watchman at a carton company located on the north side of Penrose some 300 to 400 feet east of the spur track; that about two o'clock in the morning of July 16, 1959, he heard a loud crash and a screeching noise; that he went from the

office into the factory and checked it; that he then walked to the south door which opened onto a parking lot which abutted the north side of Penrose; that he saw three men walking fast in the middle of the street going west; that he observed them turn right and go north onto the railroad track in question and out of his view; that as the men passed he heard one of them say, "Hurry, hurry." Another said, "What's going on out there?" Another, "G—— d——, it is all your fault," and then one of them said, "How in the hell did I know what that * * *." About five minutes after they had passed, Carpenter heard the sirens of an approaching police car. He thought probably it was three or four minutes from the time he heard the crash until he saw the men walk by the factory. It was a fair inference from his testimony that the noise of the crash which he said came from outside the factory was the noise made when the flatcar struck the automobile.

As heretofore noted, defendant's theory was that the accident was staged and faked and that no one was in the automobile when it was struck. Defendant submitted an instruction authorizing a verdict for it if the jury found that the automobile was placed at the crossing, that the flatcar was then permitted to roll free, and that plaintiff was not in the automobile when it was struck and carried down the track. There is no contention that defendant's evidence was not sufficient to support that submission. As noted, plaintiff's contention is that the trial court erred in admitting and refusing to strike the above testimony of witness Carpenter.

Defendant contends the trial court did not err in admitting that testimony because it was a relevant and material circumstance for the jury's consideration in determining whether the "accident" was staged or faked. Plaintiff contends that the trial court erred because the testimony had no probative value whatever in that none of the three men in question were identified as one of the four men involved in the accident. It is apparent that the sole question for decision is whether the facts of the presence, actions, and statements of the three men were circumstantially relevant and material to the issue submitted by defendant. We shall assume, agreeably to plaintiff's theory, that unless Carpenter's testimony and the reasonable inferences therefrom, considered in the light of and together with other evidence and the permissible inferences therefrom, justified an inference that the three men whom Carpenter saw and heard were some of the men allegedly in the automobile at the time it was struck, his testimony had no probative value and was erroneously admitted; i. e., that Carpenter's testimony could be relevant and material only on the issue of identification.

To determine whether there was evidence sufficient to permit a jury reasonably to find that the three men were some of the four who claimed to have been in the automobile at the time it was struck, we take into consideration and account the fact that there was evidence which tended to prove these facts and justified these inferences: that the witness Carpenter saw and heard the three men within a very few minutes after the collision of the flatcar and the automobile; that the time when he saw the men was about two in the morning and that the neighborhood was exclusively industrial; that the three men were walking fast in the street which, together with their statements, indicated that they were excited about something; that they turned off a paved street onto a spur railway track and proceeded in the direction of the place where the automobile had come to rest; that if the three men who turned off a paved street and traveled northwardly along the railroad track were not involved in the accident, they must have seen Clemens, the driver of the damaged automobile, as he lay or sat near the west rail of the track at the north curb of Penrose and if they proceeded northwardly along the track they would have come upon the battered automobile which, according to plaintiff, was then

occupied by three persons; that it was unlikely that three strangers to the occurrence would have passed by an injured man who was at the very place they turned north without taking notice of him and without remaining with him until assistance arrived or without inquiring or investigating and discovering some of the circumstances which would lead them to the three men in the automobile; that neither the plaintiff nor two of the other occupants of the automobile who testified made any statement at the trial indicating that they saw three men turn north at or travel north on the railroad track during the time the driver was sitting or lying at the north curb of Penrose or during the four to seven minutes that the plaintiff and two of the others remained in the automobile; that the first police officer who arrived at the accident scene within a very few minutes after the men turned onto the track saw no one other than the four "accident men" in the area.

The foregoing facts and circumstances and reasonable inferences noted should now be viewed in connection with and in the light of these further facts which the evidence considered favorably from the standpoint of defendant tended to prove and which justified these further inferences: that the automobile in which the men claimed they were at the time of the collision was in fact stationary across the railroad track when struck, which fact was contrary to the sworn testimony of plaintiff and two of his companions; that a reasonable inference therefrom was that the four were not in the car if the car was in fact stationary and not, as plaintiff's evidence showed, suddenly struck as it was proceeding at 10 to 25 m. p. h. across the track; that none of the four appeared to have been injured in that they bore no external signs of injury and that it was unlikely that four could have experienced such a collision (the driver having been thrown out of the automobile) without external evidences of injury; that the plaintiff and two of his companions remained in the automobile for five to ten minutes until a police officer arrived, even though plaintiff and his companions then were able to leave the automobile under their own power and even though they knew that their companion Clemens had been thrown out of the car apparently onto the track in front of an automobile being pushed sideways northwardly by a heavily loaded flatcar and that it was likely that he had been seriously injured thereby; and the reasonable inference therefrom was that it was unnatural and unlikely that plaintiff and the other two would fail to go to the assistance or to make inquiry concerning the condition of their companion Clemens; and, finally, that someone other than an authorized agent of the railroad removed a wedge and a railroad spike holding the loaded flatcar in place on the side track and removed a derail, which acts permitted and caused the flatcar to roll downgrade northwardly at the very time the automobile occupied a position across the rails of the track.

■ We are of the opinion that when the testimony of the witness Carpenter as to the presence, actions, and words of the three men is considered in the light of the evidence and the permissible inferences we have detailed above, his testimony was circumstantially relevant and material because it was sufficient to permit a reasonable inference by a jury that the three men were three of the four allegedly in the automobile at the time it was struck. The words spoken by the three were not offered for the purpose of proving the truth of those statements; the jury reasonably could have found that the statements considered as a whole and uttered under the conditions noted, tended to show that the men were excited about something and, if so, the fact that those statements were made constituted a relevant circumstance to be considered, along with all the others, on the identity issue. It is our view, therefore, that Carpenter's testimony did have some probative value and that the trial court did not err in admitting that evidence.

We have not been cited to, nor have we found, a case similar to the present one. What was said in Superior Ice & Coal Co. v. Belger Cartage Service, Inc., Mo., 337 S.W.2d 897, 904, 905, is in some respects apropos. The issue in that case was whether a fire in an abandoned building belonging to plaintiff had been caused by the acts or omissions of employees of defendant who were engaged in removing equipment from the building and, in so doing, were using cutting torches. Defendant adduced evidence tending to show that its employees were not negligent in the manner in which they had removed equipment and the court admitted other evidence to the effect that the fire could have resulted from the acts of trespassers, i. e., from the actions of so-called "gandies" who were in the habit of drinking wine and whiskey in the premises and building fires in the main building and in a nearby shed. This court there said, as to the admissibility of such evidence: "To be admissible it was sufficient to show that it was not too remote and was logically relevant to the issue. It was not necessary for the evidence to be of sufficient substantiality that it might be described as 'submissible.' We have heretofore said that 'the admissibility of circumstantial evidence does not depend upon its sufficiency as standing alone to take the case to the jury. Admissibility and sufficiency are separate and distinct.' Look v. French, 346 Mo. 972, 144 S.W.2d 128, 131. * * * Since there was evidence that they were in the building every day for three weeks prior to the fire it would certainly be a reasonable inference from that proof that they were present on the day the building burned. We also think that evidence tending to show that these 'gandies' drank wine and whiskey on the premises and built fires in the main building and in the nearby shed was logically relevant on the issue as to whether the fire was caused by the conduct of those trespassers."

The trial court may have exercised its discretion in admitting the testimony in question but, having admitted it, whether it was error to have done so is here a question of law. As we have held, the trial court did not err in admitting this evidence and consequently could not correctly grant plaintiff a new trial on the ground that it did err.

The order granting plaintiff a new trial is set aside and the case is remanded with directions to reinstate defendant's verdict.