**Jean V. INGOLD, next of friend, et al., Respondent,**

v.

**MISSOURI INSURANCE GUARANTY ASSOCIATION, Appellant.**

No. WD 39579.

Missouri Court of Appeals, Western District.

Oct. 25, 1988.

William McIntosh, Fred L. Slough, Patrick O'Brien, Kansas City, for appellants.

Gerard H. Donovan, James M. Yeretsky, Kansas City, for respondent.

Before KENNEDY, C.J., and TURNAGE and BERREY, JJ.

KENNEDY, Chief Judge.

Defendants Police Officer Roy Combs and the Kansas City Board of Police Commissioners (represented by named defendant Missouri Insurance Guaranty Association) appeal the trial court's order granting a new trial to the children of John Ingold in a wrongful death claim against defendants. Ingold was killed when his motorcycle, traveling south on Wornall Road, collided with a police car crossing Wornall Road from west to east on 90th Street in Kansas City, Missouri, on March 9, 1981. The police car was driven by defendant Roy Combs, a police officer. The jury verdict found the defendant driver of the police car zero percent at fault and motorcyclist Ingold 100 percent at fault. The trial court granted a new trial on the ground that the evidence did not support an instruction submitting Ingold's comparative negligence in the failure to keep a careful lookout. Defendants, appealing from the order granting a new trial, maintain that plaintiffs did not make a submissible case against defendants. Defendants are correct in this con-

tention, as we will show, and that holding is dispositive of the case.

The plaintiff's theory was that the motorcycle was approaching the intersection from the north in its proper lane of traffic; that the police officer, failing to keep a careful lookout, proceeded into Wornall Road in the path of the motorcycle; and that the motorcycle struck the police car in the west lane, which was the motorcycle's proper lane of traffic. Substantiation of this theory rested altogether upon a reconstruction of the accident based from marks upon the surface of the highway and other post-crash circumstances.

It is possible to prove a submissible case of negligence by evidence of circumstances existing after the accident—marks on the highway, damage to the respective vehicles, and the like. One can in some cases reason back from these circumstances and reconstruct the movements and speed of the respective vehicles with sufficient certainty to make a prima facie case of negligence on the part of one or the other of the drivers or of both of them. As an example, see *Thompson v. Jenkins*, 330 S.W.2d 802, 804–06 (Mo.1959). In order for such circumstantial evidence to make out a submissible case of negligence, however, it "must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts". *Thompson v. Jenkins*, 330 S.W.2d at 804. "Where plaintiff's evidence only supports equally either of several inconsistent factual inferences, some of which result in a failure of proof, it is insufficient (citations omitted); but if the plaintiff's probative evidence justifies, although not strong enough to compel, the more probable inference of defendant's actionable negligence, it should be sufficient for a submissible case (citations omitted)". *Id.* at 804–05. *See Schoen v. Plaza Express Co.*, 206 S.W.2d 536 (Mo.1947); *see also* Annot., *Sufficiency of evidence, in absence of survivors or of eyewitnesses competent to testify, as to place or point of impact of motor vehicles going in opposite directions and involved in collision*, 77 A.L. R.2d 580 (1961). We say the obvious when we say all the circumstances must be considered together; plaintiffs may not pick and choose among the circumstances shown by their evidence.

To determine if plaintiffs made a submissible case, we examine the evidence and the inferences therefrom in the light most favorable to plaintiff. *Day v. Wells Fargo Guard Service Co.* 711 S.W.2d 503 (Mo. banc 1986); *Redican v. K Mart Corp.*, 734 S.W.2d 864 (Mo.App.1987). We also examine any evidence which was erroneously excluded, and which has been preserved by the plaintiff for review. *Look v. French*, 346 Mo. 972, 144 S.W.2d 128, 132 (1940); *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 876 (Mo.App.1985).

In looking for a submissible case for plaintiff, we exclude from consideration the defendant's eyewitness testimony of police officer Combs and of a motorist approaching from the south, which placed the collision in the easternmost lane of Wornall Road. *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273, 274 (Mo. banc 1984).

Wornall Road where it intersects with 90th Street is a four-lane street running north and south, while 90th Street runs east and west. Police Officer Roy Combs was crossing Wornall Road from west to east on 90th Street at ten o'clock p.m. when his police car was struck in the left side, approximately at the point where the front door was hinged, by decedent Ingold's motorcycle coming from the north. There was a deep indentation at the point of impact on the police car, heavily marked with black from a tire.

The ultimate factual question presented was where the collision took place. Plaintiffs maintain that it took place in the west lane of traffic, which would have been the motorcycle's proper lane of traffic. From this they argue that it may be inferred that the police car would have stopped at the stop sign for eastbound 90th Street traffic entering Wornall and the driver should have seen defendant's motorcycle approaching from the north, in which direction the police car driver had an unobstructed view for 350 feet or more. From the occurrence of the collision in the west

lane of traffic, then, they claim they made a submissible case of failure on the part of the police car driver to keep a careful lookout. For the basic fact that the collision occurred in the west lane of traffic, upon which all the rest depends, they cite the circumstances which we now describe.

The post-crash scene is depicted by a detailed diagram with measurements prepared by Police Officer Bob Peacock of the Traffic Specialist Unit of the Kansas City Police Department, from observations and measurements made shortly after the accident. The sketch was identified and explained by Officer Peacock, and is attached hereto as an appendix. The motorcycle after the crash was lying in 90th Street at the eastern edge of Wornall Road. The length of the body of the motorcyclist extended east from the motorcycle. The police car was parked, or had come to a stop, approximately 60 feet east of the motorcycle, on 90th Street.

A motorcycle helmet was lying in 90th Street some distance east of the motorcycle and its driver. There was found in the easternmost lane of Wornall Road, some distance south of the location of the motorcycle, an eyeglass lens and nearby on the east shoulder an eyeglass frame—although we find no evidence whether they belonged to decedent.

Nine feet west of the front wheel of the motorcycle, in the easternmost lane of Wornall Road, was a deep fresh gouge in the asphalt surface of the roadway—"a double type of gouge mark ... indicating the very front end of the motorcycle", as it was described by Officer Peacock in his testimony. This gouge mark was assumed by Officer Peacock to be the point of impact, which he indicated on the sketch as "PI".

In the inside west (southbound) lane of Wornall Road, which would have been the motorcycle's proper lane, there was a single wheel skid mark 28 feet in length whose south end was 72 feet north of the gouge which Officer Peacock assumed to be the point of collision. The skid mark appears to be a straight line, veering neither to the east nor to the west. There is

no evidence that it was made by the motorcycle. It might have been, but on the other hand it might not have been.

Plaintiffs attribute great importance to a "scuff mark" appearing in the inside southbound lane of Wornall Road. A "scuff mark" is made by a tire scooting sideways as distinguished from a "skid mark", which is made by a tire sliding forward. This scuff mark, which was not noted on Peacock's diagram, was observed the morning after the accident by other police officers visiting the scene. In their report they described the mark as follows: "Sgt. Bill Capell along with the officer observed a five-foot scuff with a deviation of two feet six inches which was measured and was sixteen feet east of the west curb line of Wornall and two feet six inches south of the southwest curb line of 90th." These measurements place the scuff mark on roughly the same north-south lane as the gouge mark and the motorcycle in the easternmost lane.

It is not easy to identify this scuff mark with the scuff mark about which Sgt. Capell attempted to testify from memory. He said: "As I recall, there were marks which indicated to me and to the officers at the scene that they were made by the motorcycle in its path toward the collision with the police car. And also, as I recall, they did shift over from the southbound lane over into across the medial line, but I can't recall anything about their exact location." He also said: "It seems to me though that I can recall some sort of marks leading from the southbound lane and then moving across the center line toward the east curb."

If we assume that the scuff mark described in the written report is the same mark that Sgt. Capell remembered seeing, then the five-foot-long mark, in order to extend east of the center line of Wornall Road, must have started 16 feet east of the west curb line of Wornall Road and extended east five feet from there, although the report itself says nothing about the direction of the mark. (The total width of the two west lanes of Wornall Road at this point is 20 feet.) The mark would have

terminated one foot east of the Wornall Road center lane. The gouge mark was 12 feet farther east, and the motorcycle's front wheel yet another nine feet east.

What does this scuff mark tell us about the point where the two vehicles met? More to the point, does it furnish substantial evidence that the west (southbound) traffic lane was the point of impact? We think not. It does not rise above speculation and conjecture. Nothing shows this more clearly than plaintiffs' own shifting positions as they try to gain a foothold. At one point in the trial, they argued to the trial court that the collision had indeed occurred on the east side of Wornall Road, as maintained by defendants, but it had occurred there because the police car had driven out in front of the oncoming motorcycle and the motorcycle had veered to the east side in attempt to avoid colliding with the police car. In this court, however, they maintain that the accident occurred in the motorcyclist's lane of traffic. In an effort to connect the scuff marks with the motorcycle, they speculate in oral argument that the impact occurred in the west lane, the motorcycle became imbedded in the police car by the force of the collision and was dragged sideways to the east. There is no evidence in the case that the motorcycle by the force of the impact could have become imbedded in the side of the police car. Photographs of the police car were in evidence but are not included in the record before us. This is fanciful.

Taking all the circumstances together, as we must, we are unable to say that they tend to make it more probable that the collision occurred in the west lane than the east. In fact, it is the other way. The circumstances tend to make it much more probable that the accident occurred in the east lane than in the west, on the "wrong" side of the road for the motorcycle.

We hold, therefore, that the plaintiffs failed to make a submissible case of negligence on the part of the driver of the police car. *See Schoen v. Plaza Express Co.,* supra. The judgment is reversed and the cause remanded with instructions to reinstate the verdict and judgment for defendants.

All concur.

APPENDIX