STATE of Missouri, ex rel., MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Relator,

v.

Honorable Thomas BROWN, III, Respondent.

No. WD 50341.

Missouri Court of Appeals, Western District.

June 27, 1995.

Gerre S. Langton, Kevin P. Schnurbusch, Evans & Dixon, St. Louis, for appellant.

Robert L. Hawkins, III, Hawkins Law Office, Jefferson City; Neil Bernsteina, St. Louis; Alan C. Gold, South Miami, FL, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Relator Missouri Property & Casualty Insurance Guaranty Association ("MIGA") seeks an original writ prohibiting the Honorable Thomas Brown, III, Judge of the Circuit Court of Cole County, from continuing to preside over the underlying declaratory judgment action in the court below. MIGA complains that venue is not proper in Cole County and thus Respondent erred in denying its Motion to Transfer for improper venue and for consolidating the current case with *Jay Angoff, Director, Department of Revenue, State of Missouri v. Bel–Aire Insurance Co., et al.*, Cause No. CV 190–11488 CC, a liquidation proceeding also currently pending in the Circuit Court of Cole County. We now make our preliminary writ permanent because venue is improper in Cole County and further order Respondent to grant MIGA's motion to transfer the instant matter to the Circuit Court of St. Louis County.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. MIGA and its Role With Respect to Insolvent Insurers.

MIGA is a nonprofit, unincorporated legal entity that was created by the Missouri General Assembly by the Missouri Property and Casualty Insurance Guaranty Association Act, §§ 375.771 to 375.779, RSMo Supp.1993 (the "Guaranty Act").[1] All companies who write insurance and possess a certificate of authority to transact insurance business in Missouri are required to be member insurers of MIGA. § 375.772.1. MIGA was created to protect creditors, insureds, claimants, and the public from losses resulting from the insolvency of insurance companies doing business in Missouri. *Department of Mental Health v. Continental Sec. Life Ins. Co.*, 835 S.W.2d 349, 351 (Mo.App.1992). It accomplishes this purpose by paying certain unpaid "covered" claims under insurance policies written by insolvent insurers. *Id.*

The Missouri Guaranty Act is based on a model guaranty act developed by the National Association of Insurance Commissioners in 1969. *See* The Post–Assessment Property and Liability Insurance Guaranty Association Model Act, Model Laws, Regulations and Guidelines, Vol. II, p. 540–1, January 1986 (the "Model Act"). It appears that all or nearly all states have, like Missouri, adopted guaranty acts based upon the provisions of the Model Act. *See* Wilcott B. Dunham, Jr., *Life and Health Insurance Guaranty Associations*, at 2 (PLI Comm.Law & Practice Course Handbook Series No. 580, 1991).

In general terms, MIGA operates as follows. If an insurance company is declared insolvent, individuals who have unpaid claims under insurance policies written by that insurer can present their claims to MIGA for payment. § 375.775. MIGA's only office for transacting business is located at 7525 Ravensridge, in St. Louis County, Missouri. MIGA then pays certain limited "covered" claims. § 375.775.1. MIGA has the authority to independently investigate and determine whether or not a claim is "covered." *Id.* If the claim is paid, MIGA then assumes the right of the claimant to the assets of the insolvent insurer in the liquidation proceedings and the claimant cannot file a separate

---

1. All statutory references are to RSMo Supp. 1993 unless otherwise indicated.

claim in the liquidation proceeding. *Id.*; § 375.1212.6. If the claim is disputed by MIGA, MIGA can be sued by the claimant. MIGA also has the power to sue others. § 375.775.2. The Guaranty Act does not contain any specific provisions regarding venue of actions by or against MIGA.

It is only at the point when a claim is paid by MIGA that MIGA becomes involved in the liquidation proceedings of the insolvent insurer. The claims procedures for the liquidation proceedings of insolvent insurers are set forth in the Insurers Supervision, Rehabilitation and Liquidation Act, §§ 375.1150 to 375.1246 (the "Liquidation Act"). This Act is separate from the Guaranty Act and contains detailed procedures specifying how claims, including claims by MIGA and by the insurance guaranty associations of other states, are filed and settled by the liquidator and receivership court.

According to the Liquidation Act, MIGA's claims and the claims of other insurance guaranty associations become Class 2 claims in the liquidation proceedings. The liquidator can pay these claims or disallow some or all of them if found unreasonable. § 375.1218.2. The guaranty associations can contest the disallowance of any claims. § 375.1214. The liquidator has no power over whether MIGA or another guaranty association can deny or pay a claim to an unpaid claimant. Rather, the liquidator can only determine whether the claims of MIGA and other guaranty associations which are presented in the liquidation proceeding will be paid out of the assets of the insolvent insurer.

### B. *The Underlying Declaratory Judgment Action.*

With this background in mind, we now turn to the present action. Bel–Aire Insurance Company ("Bel–Aire") is an insurance company incorporated and licensed to trans-act property and casualty insurance in Missouri. It is also a member of MIGA. On July 15, 1993, Bel–Aire was declared insolvent. Bel–Aire's liquidation proceeding, *Jay Angoff, Director, Department of Revenue, State of Missouri v. Bel–Aire Insurance Co., et al.,* Cause No. CV 190–11488 CC ("liquidation proceeding"), is currently pending in the Circuit Court of Cole County.

On or about July 15, 1994, Flipps Nine, Inc. d/b/a Hot Wheels Skating Center and Ana Gonzales ("Plaintiffs") filed this declaratory judgment action against MIGA in Cole County—the same county in which the Bel–Aire liquidation proceeding is pending. Plaintiffs are residents of Florida who purchased insurance from Bel–Aire through Missouri purchasing groups.[2] Plaintiffs presented unpaid insurance claims based on insurance policies written by the now insolvent Bel–Aire to MIGA for payment pursuant to the Guaranty Act. MIGA refused to pay because Plaintiffs are non-Missouri residents. Plaintiffs seek a declaratory judgment that MIGA is required to provide coverage for their unpaid claims pursuant to the Guaranty Act.[3] Plaintiffs do not plead the grounds for venue in their Petition. Rather, Plaintiffs allege that the Circuit Court of Cole County has "jurisdiction pursuant to its authority as Supervising Court over the liquidation of Bel–Aire."

On August 31, 1994, MIGA filed a motion to transfer the action for improper venue or, in the alternative, dismissal of Plaintiffs' petition. MIGA claims that venue in Cole County is improper; rather, proper venue lies in St. Louis County where MIGA's only business office is located and where MIGA made the decision not to pay Plaintiffs' claims.

On September 6, 1994, Plaintiffs filed a motion in which they maintained that Cole

---

**2.** Plaintiffs belong to one of two classes of individuals: (1) insurers of unpaid claimants whose claims arose out of and are within the coverage of insurance policies issued by Bel–Aire, and (2) unpaid claimants who had coverage under insurance policies issued by Bel–Aire through purchasing groups.

**3.** Specifically, Count I of the Petition seeks a declaration of MIGA's statutory obligation to pay claims arising out of and within the coverage of insurance policies issued by Bel–Aire and enjoining MIGA from refusing to honor those claims; Count II asserts that MIGA is estopped from refusing to pay Plaintiffs' claims because MIGA assessed contributions from Bel–Aire based on their insurance policies; and under Count III Plaintiffs allege that MIGA breached a contract with Bel–Aire of which Plaintiffs are third-party beneficiaries. The alleged contract was also based on MIGA's assessment of contributions from Bel–Aire for Plaintiffs' insurance policies.

County is the proper venue for this action and moved to transfer and consolidate this declaratory judgment action with the Bel–Aire liquidation proceeding currently pending in Cole County. In support, Plaintiffs claimed that the instant action will affect the liquidation proceedings and should thus be made part of the Bel–Aire liquidation proceeding and be brought before the liquidation court.

On September 9, 1994, Dana L. Frese, the Special Deputy Liquidator for Bel–Aire, filed a motion to intervene in the instant matter. The deputy liquidator also sought consolidation of the instant matter with the Bel–Aire liquidation proceeding on the basis that the liquidator's legal liability will be greatly impacted by the outcome in the declaratory judgment action.

The Circuit Court of Cole County denied MIGA's motion to dismiss and refused to transfer for improper venue. On November 16, 1994, the court also granted Plaintiffs' motion to consolidate the current action with the liquidation proceeding, and granted the deputy liquidator's motion to intervene.

MIGA then filed its Petition for Writ of Prohibition with this Court, seeking to restrain the Circuit Court from acting further and to direct the Circuit Court to transfer the action to St. Louis County. A preliminary order in prohibition was issued by this Court. The Honorable Thomas Brown, III, successor in office to The Honorable James F. McHenry, was substituted as Respondent herein.

## II. VENUE IS NOT PROPER IN COLE COUNTY BECAUSE THE CAUSE OF ACTION DID NOT ACCRUE IN COLE COUNTY AND MIGA'S OFFICE IS NOT LOCATED IN COLE COUNTY.

### A. Standard for Granting Writ of Prohibition.

■ Prohibition is a "proper proceeding to test whether a judge is acting in excess of his jurisdiction because of improper venue." *State ex rel. McClain v. Heckemeyer,* 741 S.W.2d 734, 736 (Mo.App.1987). Relator has properly asked for a writ of prohibition to prevent the Respondent from continuing to exercise jurisdiction over this matter, since such is prohibited if venue is improper in Cole County. Relator also asks the Court to order the Respondent to transfer this case to the Circuit Court of St. Louis County, where venue is proper. If venue is improper in the court in which the action is brought, the trial court has a ministerial duty to transfer the case to a court of proper venue. § 476.410; *State ex rel. DePaul Health Ctr. v. Mummert,* 870 S.W.2d 820, 822 (Mo. banc 1994). An order in "prohibition may be used to direct a respondent having no jurisdiction over a case [due to lack of venue] to transfer the case to the court which has jurisdiction to hear the case." *State ex rel. Uptergrove v. Russell,* 871 S.W.2d 27, 30 (Mo.App.1993).

### B. Venue is Improper in Cole County Under § 508.040.

■ It is well-established in Missouri that the "propriety of venue is prescribed by statute." *State ex rel. DePaul Health Ctr.,* 870 S.W.2d at 822. The Guaranty Act establishes the right of MIGA to sue and be sued, § 375.775.2, but does not contain any special provision regarding the venue for actions brought against MIGA. Venue is therefore governed by Missouri's general venue laws.

Venue for a suit against an unincorporated association such as MIGA is governed by section 508.040, the general corporate venue statute. *State ex rel. Auto Club Inter–Ins. Exch. v. Gaertner,* 636 S.W.2d 68, 74 (Mo. banc 1982). Section 508.040 provides that venue is only proper "[1] in the county where the cause of action accrued, ... or [2] in the county where such corporation shall have or usually keep an office or agent for the transaction of their usual and customary business." The second alternative basis for jurisdiction just quoted is clearly inapplicable, for it is uncontested that MIGA does not have an office for the transaction of its statutory responsibilities in Cole County and that its sole office is in St. Louis County. Venue can thus only be proper in Cole County under section 508.040 if one or more of Plaintiffs' alleged causes of action against MIGA accrued in Cole County.

■ A cause of action in tort generally accrues for venue purposes where the defen-

dant's alleged wrongful conduct occurs. *State ex rel. Drake Publishers*, 859 S.W.2d at 204. In addition, when the alleged wrongful conduct is breach of contract, the cause of action normally accrues at the place of the alleged breach. *State ex rel. McHarevo Dev. Corp. v. Lasky*, 569 S.W.2d 273, 276–77 (Mo. App.1978); *State ex rel. McClain*, 741 S.W.2d at 736 ("the place of the breach of contract, rather then the place of making of the contract, fixes the place where a cause of action accrues").

■ Plaintiffs do not claim that MIGA engaged in wrongful conduct in Cole County. Rather, it is clear MIGA made the decision not to pay Plaintiffs' contested claims at its only business office located in St. Louis County. Moreover, Respondent conceded during oral argument that MIGA's only contact with Cole County is the fact that MIGA has claims currently pending in the Bel–Aire liquidation proceeding. These claims provide no part of the basis for the instant suit, however. Therefore, the cause of action did not accrue in Cole County and venue is improper in Cole County under the general venue statute, section 508.040.

### C. The General Power Given to the Liquidation Court and the Similarity of Some Issues in the Instant Suit and the Liquidation Proceeding Neither Create a New Basis for Venue nor Supplant the Venue Provisions of the General Venue Statute.

■ Respondent contends that this case should nonetheless remain in Cole County because the instant action will "affect" the liquidation proceeding. Respondent contends that for this reason (1) the receivership court has exclusive jurisdiction over the instant action, or (2) that the general venue statute is "flexible" and this flexibility justifies an exception to the general venue rules based on the fact that this case is "bound up" with and "ancillary to" the liquidation proceeding.

### 1. The Receivership Court Does not Have Exclusive Venue of This Case Which is Brought Under the Guaranty Act.

Respondent suggests that as a matter of public policy we should hold that exclusive jurisdiction of this case is in Cole County because that is where the liquidation action involving Bel–Aire is proceeding. Respondent admits that there is no provision explicitly mandating such a ruling, but argues that exclusive jurisdiction should be *implied* from the comprehensive nature of the Insurance Code.

In support, Respondent notes that Missouri's Insurance Code, Chapter 375, is an exclusive code for the insurance business, that liquidation proceedings in the receivership court are governed by the Insurance Code, and that jurisdiction of cases under the Insurance Code is solely in Cole County or in the county where the insolvent insurer last had its principal office. Respondent suggests that we should imply an intent to give exclusive jurisdiction of this action against MIGA to the Cole County Circuit Court also because the result of this case will have an affect on the liquidation proceeding.

Specifically, Respondent points out that if it is determined in this declaratory judgment action that MIGA is required to pay Plaintiffs under the Guaranty Act, then MIGA will assert a claim in the liquidation proceeding for the amount it pays to Plaintiffs, and the liquidator may eventually have to pay such claim if it is determined to be reasonable. Moreover, if the liquidator accepts the claim, then the receivership court will be obligated to redetermine whether Plaintiffs are entitled to be paid in passing on the reports of the liquidator. In doing so the receivership court will have to review the same issues that will be determined in the declaratory judgment action below. For this reason, the determination below whether Plaintiffs have stated a claim against MIGA will affect the money available in the liquidation proceeding.

Respondent then notes that the Insurance Code has been held to exclude application of other statutes where the Code conflicts with those statutes, and suggests that principle should be applied to conflicts between the Insurance Code and the general venue statute, and more particularly, to this case. In support, Respondent cites to *State ex rel. Melahn v. Romines*, 815 S.W.2d 92 (Mo.App.

1991), and *Medallion Ins. Co. v. Wartenbee,* 568 S.W.2d 599 (Mo.App.1978). We disagree that these cases are helpful to Respondent.

Initially, neither *Romines* nor *Medallion* are on point, for they involved the issue of jurisdiction, and the instant action involves a question of venue. "[V]enue and jurisdiction are independent terms, having separate and distinct meanings. Venue means the place where a case is to be tried, and jurisdiction relates to the power of the court to hear and determine the case." *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 197 (Mo. banc 1991) (citations omitted).

While Respondent suggests that jurisdiction of this action is in Cole County, he cites to nothing in the Insurance Code, the Guaranty Act or elsewhere which would limit jurisdiction of this case to the Cole County Circuit Court. He also admits that there is no case stating that jurisdiction of actions involving MIGA is exclusively in Cole County.

The lack of existing authority to support Respondent's position is not surprising. MIGA was created by the legislature as an alternative method for paying claims when an insurer is declared insolvent. Thus, by its very nature and purpose, all proceedings by MIGA will have an impact upon a liquidation proceeding involving that insurer. However, the statutory provisions governing liquidation proceedings, sections 375.1150 to 375.1246, do not anywhere suggest that claims against MIGA must be brought or consolidated with liquidation proceedings. To the contrary, they contain detailed procedures specifying how claims are filed and settled by the liquidator and the receivership court. Actions against MIGA are not one of those procedures or claims. Rather, MIGA only files claims in a liquidation proceeding for claims that MIGA has determined are covered by the Guaranty Act and will be paid by MIGA. § 375.1212.6; § 375.1218.2. Claims paid by out-of-state guaranty associations are similarly a part of the liquidation proceeding once they have been determined to be covered claims. § 375.1218.2.

For this reason, while this action may have some impact on how the assets of Bel–Aire are distributed, it is not itself a part of the liquidation proceeding and the liquidation court does not have exclusive jurisdiction over this claim.

Indeed, to accept Respondent's argument that the liquidation court has exclusive jurisdiction over claims such as this one would seem to also require that all other claims brought against MIGA cannot be brought as separate lawsuits but rather must be filed in the Circuit Court of Cole County. Yet, at least a dozen cases over the last fifteen years have been filed against MIGA or its predecessor in other counties of Missouri.[4] We are not willing to hold that the courts in all of those cases acted without jurisdiction.[5]

There is another, equally significant, distinction between the instant case and *Romines* and *Medallion.* Unlike those cases, this is not an action "involving the receivership proceeding." *Romines* was a claim to compel the Director of Insurance to allow

---

4. *See, e.g., Huff v. Belford Trucking Co. and Missouri Ins. Guar. Ass'n,* 809 S.W.2d 71 (Mo.App. 1991) (Grundy County); *Hirschbach Motor Lines, Inc. v. Missouri Ins. Guar. Ass'n,* 782 S.W.2d 682 (Mo.App.1989) (St. Louis County); *Ingold v. Missouri Ins. Guar. Ass'n,* 768 S.W.2d 114 (Mo.App. 1988) (Jackson County); *Clements v. Pittman and Missouri Ins. Guar. Ass'n,* 765 S.W.2d 589 (Mo. App.1989) (Clay County); *Vale v. American Fidelity Fire Ins. Co. & Missouri Ins. Guar. Ass'n,* 748 S.W.2d 923 (Mo.App.1988) (Jackson County); *King Louie Bowling Corp. v. Missouri Ins. Guar. Ass'n,* 735 S.W.2d 35 (Mo.App.1987) (Jackson County); *Pettus v. Missouri Ins. Guar. Ass'n,* 731 S.W.2d 527 (Mo.App.1987) (Washington County); *Hankins Constr. Co. v. Missouri Ins. Guar. Ass'n,* 724 S.W.2d 583 (Mo.App.1986) (St. Louis County); *Qualls v. Missouri Ins. Guar. Ass'n,* 714 S.W.2d 732 (Mo.App.1986) (St. Charles County); *Pannell v. Missouri Ins. Guar. Ass'n,* 595 S.W.2d 339 (Mo.App.1980) (St. Charles County).

5. Similarly, we do not believe Respondent could be suggesting that exclusive jurisdiction of claims against out-of-state guaranty associations lies in Cole County. Jurisdiction of such claims necessarily lies in the courts of the particular state involved. Only once those claims are adjudicated will these out-of-state guaranty associations file claims in the liquidation proceeding. Respondent has identified no reason why we should nonetheless hold that the receivership court has exclusive jurisdiction over claims against MIGA, even though MIGA and other guaranty associations are addressed identically and together under the Liquidation Act.

access to records in its possession and *Medallion* was a direct claim for the assets of the insolvent insurer. Each was necessarily a part of the receivership proceeding and could not be brought as a separate action.

By contrast, Plaintiffs in this case do not seek anything from the deputy liquidator or the insolvent insurer. Rather, Plaintiffs seek payment from MIGA under section 375.775.1 of the Guaranty Act. As explained in detail above, the legislature afforded entirely separate rights and claims procedures for liquidation proceedings than for claims against MIGA. The procedures that MIGA follows are set forth in the Guaranty Act, §§ 375.771 to 375.779. The Guaranty Act gives MIGA independent authority to sue and be sued and to hear, settle and determine covered claims presented to it for payment. § 375.775. The Guaranty Act gives the liquidator no say in MIGA's determinations as to whether or not a claim is "covered." Rather, MIGA alone determines these issues. We therefore do not find that this is an action "involving the receivership proceeding." Exclusive jurisdiction of the action is not vested in the Cole County Circuit Court.

**2. *The Instant Action is not Ancillary to the Liquidation Proceeding, nor do any Other Exceptions to the Venue Laws Exist Which Place Venue in the Receivership Court.***

■ Alternatively, Respondent argues that even though venue is not proper in Cole County under section 508.040, this Court should find an exception to the general venue statute based on the fact that this case is "ancillary to" the liquidation proceeding or so related to the liquidation proceeding that the two proceedings should be brought together. While it is true that some courts have carved out exceptions to the general venue statutes, none of these exceptions apply in this case in which section 508.040 clearly places venue in St. Louis County.

Respondent cites to *State ex rel. Garrison Wagner Co. v. Schaaf*, 528 S.W.2d 438 (Mo. banc 1975), in support of his argument that this action is ancillary to the liquidation pro-

ceeding. However, *Garrison* involved the entirely separate issue of how to determine venue of a third-party claim. In that case, the original action was filed for breach of a lease. Venue for that action was in St. Louis County. Subsequently, the defendant in the original action brought a third-party petition pursuant to Rule 52.11(a), joining its sublessee on the grounds that the sublessee would also be liable to the original plaintiff if the lease were breached. Venue for this claim would not have been proper in St. Louis County if it had been brought as an independent action. *Id.* at 440.

The Missouri Supreme Court first noted that Missouri's statutes do not state how to determine venue for a third-party claim. *Id.* at 441. The Court was therefore required to determine whether, in light of the absence of any other stated statutory venue, venue of the third-party action could be proper in St. Louis County since it was ancillary to the original action. The Court answered in the affirmative. It held that *"in third-party practice* it need not be shown that venue requirements have been independently complied with but that such may rest on venue properly shown in the original case. . . ." *Id.* at 442 (emphasis added). The Court based this holding on the fact that "procedural statutes are to be liberally construed and that the obvious purpose of third-party practice is to reduce the number of cases filed and to provide a more prompt, efficient and economical method for disposing of litigation. . . ." *Id.*

Respondent also cites to *State ex rel. Springfield v. Barker*, 755 S.W.2d 731 (Mo. App.1988), in which the court recognized another exception to the general venue rule when two municipal corporations from different counties were properly joined as defendants. Normally, venue against municipal corporations is determined by section 508.050, which provides that suits can only be commenced in "the county in which the municipal corporation is situated. . . ." In that case, the two defendants which were joined in the action were "situated" in different counties. The court held that because the

venue statute did not contain a provision for such circumstances, the suit could be filed in either county in which the municipal corporations were situated. *Id.* at 734.

Both *Garrison* and *Springfield* are distinguishable from the instant case. First, the holding in *Garrison* was specifically limited to properly joined third-party actions. The instant action is not a third-party action, or ancillary, to the liquidation proceedings. Equally significantly, both *Garrison* and *Springfield* involved situations in which the existing statutory venue laws did not provide *any* venue for the action. In *Garrison* there was not a venue provision which addressed third-party actions and in *Springfield* there was not a venue provision for suits against properly joined municipal corporations.

By contrast, here, section 508.040 clearly provides for venue in St. Louis County. Neither *Garrison* nor *Springfield* suggested that the courts would create an alternative venue where, as here, the legislature has already established a different applicable venue for the action.

In addition, it is important to note that if the legislature had intended that all claims against MIGA should be filed in the same court as the liquidation proceedings, it could have so stated in the Guaranty Act or in the provisions of the Insurance Code which deal with MIGA's claims in the liquidation proceedings. For instance, the Insurance Code specifically provides that the Director of Insurance has authority to file delinquency proceedings in the Circuit Court of Cole County or in the county where the insolvent insurer last had its principal office. § 375.1154.6. The Guaranty Act also specifically provides that MIGA can sue or be sued. § 375.775.2. However, neither the Code nor the Guaranty Act contain any provision restricting all claims against MIGA to the county in which the liquidation proceedings is pending.

We do not mean to suggest that Respondent has not identified valid policy reasons why the legislature should provide that Cole County is an appropriate venue for actions against MIGA. As Respondent notes, in many cases the filing of such claims and their consolidation with liquidation proceedings might allow for the more economical and efficient trial of issues, and would avoid the need to redetermine certain factual and legal issues in the liquidation proceeding. We simply do not believe that there currently exists any statutory authority for holding that venue of this suit lies in Cole County, and this Court is unwilling to imply such a basic change in the venue laws of this State without some legislative authority in the Guaranty Act, the Insurance Code, or the general venue laws of this State.

For these reasons, we now make our preliminary writ permanent and order Respondent to take no further action in this proceeding except to transfer the instant matter to the Circuit Court of St. Louis County.

All concur.

LOWENSTEIN, Judge, concurring.

The reasoning in the majority opinion leading to the conclusion that venue lies only in St. Louis County cannot be faulted. What seems terribly illogical, and wasteful of litigants and court time, is to require an additional suit in a different circuit to adjudicate a claim by someone unfortunate enough to have their insurance company declared insolvent. *State ex. rel. Garrison Wagner Co. v. Schaaf,* 528 S.W.2d 438, 442 (Mo. banc 1975). If there were any way, in the interest of judicial economy, to allow venue in Cole County, while still adhering to the general venue statute which directs this case to St. Louis County, I would be supportive. Allowing this case to proceed as part of the liquidation action would not adversely affect MIGA. *State ex. rel. Govero v. Kehm,* 850 S.W.2d 100, 102 (Mo. banc 1993). However, it is not up to this court to change what is the statutory scheme on venue under these facts. *State ex. rel. Missouri Department of Natural Resources v. Roper,* 824 S.W.2d 901, 904 (Mo. banc 1992).

The legislature should be urged to remedy the situation presented in this writ.